UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:21-cv-22445-MOORE/LOUIS

DONALD J. TRUMP et al.,

      Plaintiffs,

vs.

YOUTUBE, LLC and SUNDAR PICHAI,

      Defendants.

_____

**DEFENDANTS' MOTION TO TRANSFER
TO THE NORTHERN DISTRICT OF CALIFORNIA
AND SUPPORTING MEMORANDUM OF LAW**

Defendants YouTube, LLC and Sundar Pichai (collectively, "YouTube") move under 28 U.S.C. § 1404(a) to transfer this case to the Northern District of California.

Plaintiffs' Amended Complaint fails as a matter of law. But before the merits of Plaintiffs' claims can be resolved, the Court must address a threshold problem: Plaintiffs filed suit in the wrong place. In creating accounts to use the YouTube service, Plaintiffs agreed to YouTube's Terms of Service ("TOS" or "Terms"), which includes an express forum-selection clause requiring litigation in California. The Supreme Court has made clear that "a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases." *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for the W. Dist. of Tex.*, 571 U.S. 49, 63 (2013) (citation omitted). A long and unbroken line of cases have held that YouTube's forum-selection clause is valid and enforceable, and have applied it to transfer cases just like this one to the parties' designated federal forum—the Northern District of California. *See, e.g.*, *Muhammad v. YouTube, LLC*, 2019 WL 2338503, at *3 (M.D. La. June 3, 2019); *Seaman v. YouTube, LLC*, No. 3:18-cv-833-HEH, Dkt. 20 at 1 (E.D. Va.

Apr. 5, 2019) and No. 4:19-cv-01903-SBA, Dkt. 20 at 1 (N.D. Cal. Apr. 5, 2019); *Song fi, Inc. v. Google Inc.*, 72 F. Supp. 3d 53, 64 (D.D.C. 2014).

This case is no different. Plaintiffs complain about the editorial decisions YouTube made about what videos are allowed to appear on its service. They claim that YouTube inconsistently applied the content guidelines incorporated into the TOS and seek an order requiring YouTube to restore their videos to the platform. The governing agreement could hardly be clearer about where such disputes belong: "All claims arising out of or relating to these terms or the [YouTube] Service . . . will be litigated exclusively in the federal or state courts of Santa Clara County, California, USA." While meritless, Plaintiffs' claims fall squarely within this mandatory forum-selection clause. Accordingly, Plaintiffs' "choice of forum merits no weight," *Atl. Marine*, 571 U.S. at 63, and this case must be transferred to the Northern District of California. Here, as in "all but the most unusual cases," "'the interest of justice' is served by holding parties to their bargain." *Id*. at 66 (quoting 28 U.S.C. § 1404(a)).

## I.  FACTUAL AND PROCEDURAL BACKGROUND

### A.  YouTube and Its Terms of Service

YouTube is a limited liability company, and is "one of the largest and most popular video distribution platforms on the Internet." Am. Compl. ¶¶ 2, 27. "[A]n estimated five hundred (500) hours of video content are uploaded to YouTube every minute." *Id.* ¶ 2. Plaintiffs allege that in 2020, YouTube had "thirty-seven (37) million channels, and 1.3 billion people used YouTube." *Id.* ¶ 87. YouTube allows visitors to access and use its service—including by creating channels and uploading videos free of charge—provided they agree and adhere to the TOS. *See id.* ¶ 32; *see also* Decl. ¶¶ 2-3 & Ex. A (https://www.youtube.com/static?template=terms (eff. Mar. 17, 2021)).[1]

---

[1] Citations to "Decl." are to the Declaration of Alexandra N. Veitch, dated September 17, 2021, and citations to "Ex. _" are to the exhibits attached thereto.

The TOS govern the relationship between YouTube and its users. Am. Compl. ¶¶ 159-60, 174, 182, 189, 194, 206, 212, 220, 222. To keep YouTube and its users safe, the TOS also incorporate "a set of 'Community Guidelines'" governing "content on the platform, including videos[.]" *Id.* ¶ 37. YouTube's Community Guidelines include specific standards prohibiting, for instance, hate speech and the incitement of violence on the platform. *See id.* ¶¶ 10, 37-41, 45, 139, 163, 170. The TOS prohibit users from "submit[ting] to the Service any Content that does not comply with this Agreement (including the YouTube Community Guidelines)[.]" Ex. A at 4. The TOS also expressly give YouTube the right to remove content and suspend or terminate user accounts that YouTube considers contrary to the Community Guidelines or otherwise potentially harmful: "If [YouTube] reasonably believe[s] that any Content is in breach of this Agreement or may cause harm to YouTube, [its] users, or third parties, [YouTube] may remove or take down that Content in our discretion." *Id.* at 5; *see also id.* ("YouTube may suspend or terminate your access, your Google account, or your Google account's access to all or part of the Service if (a) you materially or repeatedly breach this Agreement; . . . or (c) we believe there has been conduct that creates (or could create) liability or harm to any user, other third party, YouTube or our Affiliates.").

Users are able to post content to their own "channels." Decl. ¶ 10. In order to create a channel and upload content to YouTube, every user, without exception, is required to accept the TOS. *Id.* ¶¶ 10-11. For example, in the current version of the sign-up process, when users create a channel, they are presented with the text: "By tapping Create Channel you agree to YouTube's Terms of Service." *Id.* ¶ 10. The phrase "YouTube's Terms of Service" appears in blue font, and links to the complete text of the TOS. *Id.* By clicking "Create Channel," users agree to abide by the TOS. *Id.* Without accepting the TOS, the user cannot activate the channel. *Id.*

At all times relevant here, the TOS have included an express forum-selection clause designating the courts in Santa Clara County, California as the required venue for litigation arising out of the YouTube Service. Decl. ¶¶ 5-6. This is the version of the provision applicable to all current users (*id.* ¶¶ 3, 8-9):

> All claims arising out of or relating to these terms or the Service will be governed by California law, except California's conflict of laws rules, and will be litigated exclusively in the federal or state courts of Santa Clara County, California, USA. You and YouTube consent to personal jurisdiction in those courts.

Ex. A at 7. "Service" is a defined term in the TOS that encompasses "the YouTube platform and the products, services and features we make available to you as part of the platform[.]" *Id.* at 1. Santa Clara County, California lies within the Northern District of California. *See* 28 U.S.C. § 84(a). Because many millions of users create channels and upload videos on YouTube's website free of charge, the forum-selection clause is necessary to manage the costs of litigation and reduce the inconvenience to YouTube that would arise if the company were forced to litigate claims all over the world. Decl. ¶ 7; *accord Song fi*, 72 F. Supp. 3d at 64.

### B.      Plaintiffs' Lawsuit Against YouTube

The Plaintiffs in this case are Former President Donald J. Trump and seven other YouTube account holders. Former President Trump and four of the other plaintiffs allegedly reside in Florida (Am. Compl. ¶¶ 16-18, 20, 22, 24-25), one resides in New York (*id.* ¶ 19), one is domiciled in Colorado (*id.* ¶ 21), and one is an organization established in the District of Columbia (*id.* ¶ 23). Plaintiffs also purport to represent a class of YouTube users who were allegedly harmed by YouTube's content moderation decisions between June 1, 2018 and the present. *Id.* ¶¶ 1, 302. The putative nationwide class purportedly includes "well over one (1) million Members[.]" *Id.* ¶ 14.

Former President Trump's claims revolve around "his official YouTube channel," which he "used . . . to engage with the general public" and for national political purposes. *Id.* ¶ 48. He

alleges that on January 6, 2021, YouTube removed a video he posted about the mob attack on the United States Capitol, because it included false information about the outcome of the 2020 election in violation of YouTube's Community Guidelines. *Id.* ¶¶ 163-64; *see also id.* ¶ 96. On January 12, 2021, YouTube removed an additional video from the account and barred users from posting comments on videos on Former President Trump's channel. *Id.* ¶¶ 165-66. The next day, YouTube allegedly suspended Former President Trump's ability to upload new videos for seven days and, on January 26, 2021, extended that suspension indefinitely. *Id.* ¶¶ 167-69; *see also id.* ¶ 6. Plaintiffs allege that YouTube took these moderation actions "at the behest of, in cooperation with, and the approval of, Democrat lawmakers" in Congress. *Id.* ¶ 9. The seven other Plaintiffs assert claims analogous to Former President Trump's: each posted content that YouTube allegedly took down or otherwise moderated, mostly under the policies incorporated into YouTube's Community Guidelines against medical or COVID-related misinformation and incitement or glorification of violence. *Id.* ¶¶ 173-234.

Plaintiffs filed this lawsuit against YouTube on July 7, 2021 (Dkt. 1). The original Complaint, on behalf of Former President Trump and two other co-plaintiffs (Dr. Colleen Victory and Austen Fletcher), asserted that YouTube, a private company, violated Plaintiffs' First Amendment rights by enforcing its content rules to remove or limit the material they were permitted to post on the service. Compl. (Dkt. 1) ¶¶ 126-40. Plaintiffs also sought a declaratory judgment that 47 U.S.C. § 230 ("Section 230")—a federal statute that protects online services from claims arising from their content moderation choices—is unconstitutional. *Id.* ¶¶ 141-51.

On July 27, 2021, Plaintiffs filed the operative Amended Complaint (Dkt. 21), which carries forward the same First Amendment and declaratory judgment claims, Am. Compl. ¶¶ 235-66, while adding five new plaintiffs and two new causes of action under Florida law. The first new

cause of action is a general claim under Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"). *Id.* ¶¶ 267-82. The second is asserted under a recently enacted Florida statute that specifically seeks to restrict the content-moderation judgments of large "social media platforms" (*id.* ¶¶ 283-301)—a statute that a federal court preliminarily enjoined for violating the First Amendment shortly before its July 1, 2021 effective date. *See NetChoice, LLC v. Moody*, 2021 WL 2690876, at *11-12 (N.D. Fla. June 30, 2021) (Hinkle, J.), *appeal docketed*, No. 21-12355 (11th Cir. July 13, 2021).

Each of the Plaintiffs named in the Amended Complaint alleges that they created and maintained a YouTube channel. Am. Compl. ¶¶ 160, 174, 182, 189, 194, 206, 212, 222. Plaintiffs created those channels between 2009 and 2020. *Id.*; Decl. ¶ 12. In connection with the creation of their channels and/or their uploading videos to those channels, each Plaintiff affirmatively clicked a button indicating their acceptance of and agreement to be bound by the TOS, including the forum-selection clause. *Id.* The Amended Complaint offers similar allegations for all of the named Plaintiffs, each involving some combination of YouTube's alleged removal of Plaintiffs' uploaded videos, restriction of their ability to earn advertising revenue from the videos, and/or suspension of Plaintiffs' ability to post new content on the service. Am. Compl. ¶¶ 173-234. Plaintiffs claim that these editorial judgments violated the First Amendment on the theory that YouTube was somehow transformed into a state actor by the public statements of various politicians and Democratic members of Congress. *Id.* ¶¶ 63-77, 236-44. In connection with their state-law claims, Plaintiffs take issue with YouTube's Community Guidelines, alleging that YouTube did not "consistently" or predictably apply the standards in those Guidelines to Plaintiffs' videos and other content on its service. *Id.* ¶¶ 7, 10, 282, 300-01. Plaintiffs seek statutory and punitive damages, along with broad injunctive relief—an order forcing YouTube to "immediately reinstate access of

Plaintiff and Putative Class Members to their YouTube accounts," "to remove its warning labels and misclassification of all content of the Plaintiff and the Class and to desist from any further warnings or classifications," and to generally refrain from further moderation of Plaintiffs' content or accounts. *Id.* Prayer for Relief & ¶ 12.

In addition to suing YouTube itself, Plaintiffs have named Sundar Pichai as a defendant. Mr. Pichai is the Chief Executive Officer of Google LLC ("Google"), YouTube's parent company. *Id.* ¶¶ 27-28. Plaintiffs purport to sue Mr. Pichai in his personal and individual capacity, though their allegations about him are conclusory and boilerplate, such as that he "is responsible for the acts . . . of YouTube" (*id.* ¶ 28), "exercises control over and implementation of the content and policy of YouTube" (*id.* ¶ 47), and "upon information and belief, . . . was personally responsible for YouTube's de-platforming" of Plaintiffs (*id.* ¶ 253). It is clear from the Amended Complaint that Plaintiffs' claims against Mr. Pichai are identical to, and wholly derivative of, their claims against YouTube.[2]

On August 23, 2021 (more than six weeks after his initial complaint was filed), Former President Trump moved for a preliminary injunction, asking this Court to order YouTube, among other things, to immediately "reinstate Plaintiff's access to his YouTube channel," lift the ban on "certain uploaded videos," and "permit Plaintiff's sale of merchandise on his channel in the normal

---

[2] This Court does not have personal jurisdiction over Mr. Pichai. Indeed, it is telling that Plaintiffs' Amended Complaint does not allege personal jurisdiction even in cursory terms (Am. Compl. ¶¶ 13-15, 28). This jurisdictional defect would be remedied by a transfer to the Northern District of California. *See, e.g.*, *Arcadia Health Servs., Inc. v. Martinez*, 2015 WL 11348281, at *1 (S.D. Fla. Jan. 6, 2015) ("[T]ransferring this action to the Northern District of California will likely moot any issues of personal jurisdiction, since all Defendants reside in California and allegedly committed the wrongful acts there."); *cf. Meterlogic, Inc. v. Copier Sols., Inc.*, 185 F. Supp. 2d 1292, 1303 (S.D. Fla. 2002) ("[T]he 'interest of justice' is furthered by the transfer of a case in which the transferor court lacks jurisdiction over all defendants."); 28 U.S.C. § 1631 (allowing courts to transfer cases to address jurisdictional defects). The Notice of Appearance on behalf of Mr. Pichai expressly preserves his right to challenge personal jurisdiction (Dkt. 46 at 1), and he preserves the same right here.

course[.]" Mot. (Dkt. 43 at 30), Request for Relief. Plaintiffs did so without having served the Amended Complaint on YouTube or Mr. Pichai. Indeed, Plaintiffs made no effort to serve the complaint or notify Defendants about this action (or their motion for a preliminary injunction) until August 27, 2021.

Shortly thereafter, YouTube agreed to accept a service waiver under Fed. R. Civ. P. 4(d), which Plaintiffs provided on August 31, 2021. *See* Notice (Dkt. 53) at 1 n.1. On that same date, counsel for Defendants first appeared in this action (Dkts. 46-52) and fulfilled their duty under Local Rule 3.8 to inform this Court of two similar cases filed by Former President Trump in this District (Dkt. 53, identifying *Trump v. Facebook*, No. 1:21-cv-22440, and *Trump v. Twitter*, No. 1:21-cv-22441). On September 2, 2021, the Court granted YouTube's motion to defer setting a briefing schedule on Plaintiff's preliminary injunction motion until after it rules on this motion to transfer. Dkt. 56. On September 1, 2021, Twitter filed its own motion for transfer to the Northern District of California, which will be fully briefed by October 7, 2021. *See* Transfer Mot. (Dkt. 41) & Scheduling Order (Dkt. 50), *Trump v. Twitter*, No. 1:21-cv-22441.

## II.   MEMORANDUM OF LAW

### A.   The Parties Agreed to a Binding Forum-Selection Clause, Which Requires This Case To Be Litigated in the Northern District of California

"[A] forum-selection clause may be enforced by a motion to transfer under § 1404(a)[.]" *Atl. Marine*, 571 U.S. at 52; *accord* 28 U.S.C. § 1404(a) (permitting transfer "to any district . . . to which all parties have consented"). "When a defendant files such a motion, . . . a district court should transfer the case unless extraordinary circumstances unrelated to the convenience of the parties clearly disfavor a transfer." *Atl. Marine*, 571 U.S. at 52; *see also id*. at 62-63 ("[A] valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases.") (citation omitted); *Turner v. Costa Crociere S.p.A.*, __ F.4th __, 2021 WL 3673727, at *4 (11th

8

Cir. Aug. 19, 2021) (enforcing forum-selection clause requiring litigation in Genoa, Italy); *GDG Acquisitions, LLC v. Gov't of Belize*, 749 F.3d 1024, 1028 (11th Cir. 2014) (explaining that "an enforceable forum-selection clause carries near-determinative weight").

Because a forum-selection clause "represents the parties' agreement as to the most proper forum," the presence of such a clause requires that certain "adjustments" be made to the regular § 1404(a) analysis. *Atl. Marine*, 571 U.S. at 62-63 (citation omitted). "These adjustments require a court evaluating a motion to transfer pursuant to a forum-selection clause to afford no weight to either the plaintiff's selected forum or the parties' private interests, and to ignore the choice-of-law rules of the original venue." *Hisey v. Qualtek USA, LLC*, 753 F. App'x 698, 703 (11th Cir. 2018). In such cases, the plaintiff "bear[s] the burden of showing why the court should not transfer the case to the forum to which the parties agreed." *Atl. Marine*, 571 U.S. at 64; *see also Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595 (1991) (party seeking to avoid a forum-selection clause bears a "heavy burden of proof") (citation omitted); *Turner*, 2021 WL 3673727, at *2 (same); *Lebedinsky v. MSC Cruises, S.A.*, 789 F. App'x 196, 202 (11th Cir. 2019) (same).

Applying these principles, this Court—and other courts in this District—routinely enforce forum-selection clauses. *See, e.g.*, *Turner v. Costa Crociere S.p.A.*, 488 F. Supp. 3d 1240, 1256 (S.D. Fla. 2020) (Moore, C.J.), *aff'd* 2021 WL 3673727 (11th Cir. Aug. 19, 2021); *Vanderham v. Brookfield Asset Mgmt., Inc.*, 102 F. Supp. 3d 1315, 1319-20 (S.D. Fla. 2015) (Moore, C.J.); *Fed. Deposit Ins. Corp. v. Nationwide Equities Corp.*, 2015 WL 7720633, at *2-3 (S.D. Fla. Nov. 30, 2015) (Moore, C.J.); *Gordon v. Sandals Resorts Int'l, Ltd.*, 418 F. Supp. 3d 1132, 1141-42 (S.D. Fla. 2019). The same result is required here: Plaintiffs' claims are governed by a binding forum-selection clause; that provision requires that this litigation proceed in the Northern District of

California; and no extraordinary circumstances preclude a transfer to the parties' designated federal forum.

>    1.    **The forum-selection clause in YouTube's TOS governs Plaintiffs' claims**

Plaintiffs are YouTube account holders, and in creating their channels and/or uploading videos, they affirmatively agreed to YouTube's TOS, including its forum-selection clause. *See* Decl. ¶¶ 10-12; *accord* Am. Compl. ¶¶ 159-60, 174, 182, 189, 194, 206, 212, 220, 222. The broad language of that provision readily encompasses Plaintiffs' claims that YouTube violated federal and state law by removing videos and other content on its service (Am. Compl. ¶¶ 235-54) and allegedly inconsistently applying its Community Guidelines (*id.* ¶¶ 267-301).

The governing forum-selection clause applies to "[a]ll claims arising out of or relating to these terms or the Service[.]" Ex. A at 7. As noted above, the term "Service" is expressly defined as "the YouTube platform and the products, services and features we make available to [users]." *Id.* at 1. The phrase "arising out of" is interpreted broadly and covers "all causes of action arising directly or indirectly from the business relationship evidenced by the contract." *Stewart Org., Inc. v. Ricoh Corp.*, 810 F.2d 1066, 1070 (11th Cir. 1987), *aff'd*, 487 U.S. 22 (1988); *accord Diabetic Care Rx, LLC v. Express Scripts, Inc.*, 2018 WL 4511878, at *2 (S.D. Fla. June 29, 2018) (claims of bad faith and unfair practices covered by a forum-selection agreement applying to "[a]ll litigation between the parties arising out of or related in any way to the interpretation or performance of the Agreement"); *Vernon v. Stabach*, 2014 WL 1806861, at *4 (S.D. Fla. May 7, 2014) ("[W]here the contracts at issue contain a broad forum-selection clause applying to '[a]ny suit . . . arising out of or in connection with' an agreement, federal courts have had no trouble finding statutory and tort claims 'arising directly or indirectly from the relationship evidenced by the contract' to fall within the scope of the clause.") (citations omitted); *cf. Slater v. Energy Servs.*

10

*Grp. Int'l, Inc.*, 634 F.3d 1326, 1330-31 (11th Cir. 2011) (federal statutory claims fall within the scope of a forum-selection clause covering "all claims arising 'directly or indirectly' from the relationship evidenced by the contract").

It is clear from the Amended Complaint that Plaintiffs' claims fall within the clause's broad scope. *See McCoy v. Sandals Resorts, Ltd.*, 2019 WL 6130444, at *10 (S.D. Fla. Nov. 19, 2019) ("[W]hen ascertaining the applicability of a contractual provision to particular claims, courts must examine the substance of those claims, shorn of their labels.") (citation omitted). These claims arise from Plaintiffs' status as YouTube users and stem from YouTube's alleged decisions to remove their videos (or other content) from the service or to suspend their channels and thereby block Plaintiffs from posting new content to the service. Am. Compl. ¶¶ 234-301. Such claims indisputably "aris[e] out of or relat[e]" to the YouTube service. Ex. A at 7. Indeed, it is difficult to imagine claims that more directly arise out of the YouTube platform than those challenging its decisions about what content can appear on that platform and the conditions under which material can be posted to it.

Plaintiffs also affirmatively allege that their claims arise out of or relate to the Terms themselves. Plaintiffs repeatedly complain that YouTube did not apply its TOS—including the Community Guidelines expressly incorporated in those Terms (*see id.* ¶¶ 7, 271, 287)—in a consistent or even-handed way. There is no way to evaluate these claims without considering the Terms. *See, e.g.*, *Loomer v. Facebook, Inc.*, 2020 WL 2926357, at *3 (S.D. Fla. Apr. 13, 2020) (holding that claims challenging Facebook's deactivation of user accounts "arise[] out of or relate[] to" Facebook's Terms of Service); *Oribe Hair Care, LLC v. Canales*, 2017 WL 2059582, at *1 (S.D. Fla. May 15, 2017) (holding that claims are covered by forum-selection clause that applied

to "any controversy or claim arising out of or relating to this Agreement" where they would require a court to interpret the agreement).

It is not surprising, therefore, that an unbroken line of decisions has held that claims just like those Plaintiffs make here—which challenge YouTube's content-moderation actions, including removing videos and suspending accounts—fall squarely within the forum-selection clause in YouTube's TOS. *See Seaman*, 3:18-CV-833-HEH, Dkt. 20 at 1 (applying forum-selection clause to claims based on suspension of YouTube account "for violation of policies governing video content uploaded to YouTube's website" and transferring case to Northern District of California); *Kifle v. YouTube LLC*, No. 1:21-cv-00238-JPB, Dkt. 24 (N.D. Ga. Mar. 12, 2021) and No. 3:21-cv-01752-CRB, Dkt. 24 (N.D. Cal. Mar. 12, 2021) (same, for claims based on YouTube's termination of plaintiff's YouTube channel for Community Guidelines violations); *Lewis v. Google, Inc.*, 2019 WL 10749715, at *3 (D. Colo. Dec. 31, 2019) (same); *Ramani v. YouTube LLC*, 2019 U.S. Dist. LEXIS 162086, at *5 (S.D.N.Y. Sept. 20, 2019) (same); *Muhammad*, 2019 WL 2338503, at *4 (same); *Song fi*, 72 F. Supp. 3d at 64 (same, for claims based on removal of YouTube video and resetting of video view count).

## 2. YouTube's Forum-Selection Clause Is Mandatory and Enforceable

Forum-selection clauses are "presumptively valid and enforceable" absent a "strong showing" that "enforcement would be unfair or unreasonable under the circumstances." *Krenkel v. Kerzner Int'l Hotels Ltd.*, 579 F.3d 1279, 1281 (11th Cir. 2009) (per curiam); *see also Turner*, 2021 WL 3673727, at *2 (same). Courts have consistently held forum-selection clauses in standard-form online agreements—like the YouTube TOS that Plaintiffs expressly accepted (Decl. ¶ 12)—to be "valid and enforceable." *Segal v. Amazon.com, Inc.*, 763 F. Supp. 2d 1367, 1369 (S.D. Fla. 2011) (enforcing forum-selection clause in terms accepted by plaintiffs as a condition of

creating Amazon account); *accord Loomer*, 2020 WL 2926357, at *3 (same for Facebook's Terms of Service); *Davis v. Avvo, Inc.*, 2011 WL 4063282, at *2-3 (M.D. Fla. Sept. 13, 2011) (enforcing forum-selection clause included in click-wrap Terms of Use agreement); *cf. Laine v. JetSmarter, Inc.*, 2019 WL 1900339, at *2 (S.D. Fla. Apr. 29, 2019) (enforcing arbitration clause found in a "click-wrap agreement"); *Temple v. Best Rate Holdings LLC*, 360 F. Supp. 3d 1289, 1304-05 (M.D. Fla. 2018) (enforcing arbitration clause found in website Terms and Conditions where user was cautioned that he accepted the terms by clicking a button labeled "Get a Quote").

YouTube's forum-selection clause, in particular, has repeatedly been applied. Indeed, every federal court that has considered a transfer motion based on YouTube's TOS has enforced the clause, finding no procedural or substantive issues with its requirement that litigation relating to YouTube's service or TOS proceed in the Northern District of California. *See, e.g., Song fi*, 72 F. Supp. 3d at 62-64 ("[I]t is not improper for YouTube to require that claims against it be brought in the non-arbitrary forum where it resides."); *accord Kifle*, No. 1:21-cv-00238-JPB, Dkt. 24 at 8 (transferring case brought by YouTube user despite Plaintiff "point[ing] to evidence that California will be a less convenient forum for him"); *Lewis*, 2019 WL 10749715, at *3 ("Plaintiff has failed to cast any doubt on the validity of the Forum Selection Clause, and so the *Atlantic Marine* analysis applies here."); *Ramani v. YouTube LLC*, 2019 U.S. Dist. LEXIS 197106, at *4 (S.D.N.Y. Nov. 12, 2019) ("The Court concludes that YouTube's forum selection clause controls and transfers the action to the United States District Court for the Northern District of California."); *Ramani*, 2019 U.S. Dist. LEXIS 162086, at *5 (same); *Muhammad*, 2019 WL 2338503, at *2 (finding "no evidence or jurisprudence to show that the forum-selection clause was induced by fraud or overreaching"); *Seaman*, No. 3:18-CV-833-HEH, Dkt. 20 at 6 (finding no oppression or surprise); *Biltz v. Google, Inc.*, 2018 112632WL 3340567, at *5-6 (D. Haw. July 6, 2018) (finding no fraud

or overreaching); *Kijimoto v. YouTube, LLC*, 2018 WL 5116415, at \*3-4 (C.D. Cal. Jan. 30, 2018) (holding that "the forum-selection clause of the TOS is controlling"); *Bowen v. YouTube, Inc.*, 2008 WL 1757578, at \*2 (W.D. Wash. Apr. 15, 2008) ("The Court concludes that the forum selection clause herein is valid [and] enforceable.").[3]

The forum-selection provision is also mandatory. It states that covered claims "***will*** be litigated ***exclusively*** in the federal or state courts of Santa Clara County, California[.]" Ex. A at 7 (emphasis added); *see, e.g.*, *Bowen*, 2008 WL 1757578, at \*2 (explaining that YouTube's clause is "cast in mandatory terms"); *accord Emerald Grande, Inc. v. Junkin*, 334 F. App'x 973, 976 (11th Cir. 2009) (clause declaring that Okaloosa Courts "***will*** be the venue for any dispute" was mandatory) (emphasis added); *DeLima v. Google, Inc.*, 2021 WL 294560, at \*9 (D.N.H. Jan. 28, 2021) ("Any future claim arising out of the AdSense or similar agreement for Google-owned services, however, must be brought in the Northern District of California as a result of the presumptively enforceable and mandatory forum selection clause in that agreement and Google and YouTube's general terms of service."), *appeal docketed*, No. 21-1161 (1st Cir. Feb. 26, 2021). In short, under the clear terms of the governing agreement, the parties agreed to a binding requirement to resolve these claims in a different forum. By filing this case in this Court, Plaintiffs disregarded that agreement, and a transfer to the Northern District of California is required.

---

[3] It is not just YouTube. Courts routinely enforce similar forum-selection clauses to transfer similar cases against other online service providers, including where plaintiffs seek to hold services liable under the First Amendment or under state consumer-protection laws. *See Perez v. LinkedIn Corp.*, 2020 WL 5997196, at \*1 (S.D. Tex. Oct. 9, 2020) (enforcing forum-selection clause in LinkedIn's TOS to hold that, if plaintiff refiles his dismissed First Amendment claims, they will be transferred to N.D. Cal.); *Atkinson v. Facebook, Inc.*, 2020 WL 6151527, at \*1 (D. Conn. July 27, 2020) (enforcing forum-selection clause to transfer a case including a First Amendment claim and claim under Connecticut Unfair Trade Practices Act); *Brittain v. Twitter Inc.*, 2019 WL 110967, at \*3 (D. Ariz. Jan. 4, 2019) (transferring First Amendment claim against Twitter); *Abid v. Google, Inc.*, 2017 WL 11048805, at \*1 (M.D.N.C. Oct. 12, 2017), *report & recommendation adopted*, 2018 WL 8059093 (M.D.N.C. Feb. 13, 2018) (transferring First Amendment claim against Google based on suspension of AdWords account).

### B.    Plaintiffs Cannot Carry The Heavy Burden Necessary to Overcome the Forum-Selection Clause

Because this case involves a valid forum-selection clause, in considering YouTube's § 1404(a) motion, the Court "should not consider arguments about the parties' private interests. When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation. A court accordingly must deem the private-interest factors to weigh entirely in favor of the preselected forum." *Atl. Marine*, 571 U.S. at 64. Instead, the Court "may consider arguments about public-interest factors only"—but, as the Supreme Court has made clear, "those factors will rarely defeat a transfer motion." *Id.*; *accord Segal*, 763 F. Supp. 2d at 1368 (recognizing "the venue mandated by a choice of forum clause rarely will be outweighed by other 1404(a) factors") (quoting *P & S Bus. Machines, Inc. v. Canon USA, Inc.*, 331 F.3d 804, 807 (11th Cir. 2003)).

"Public-interest factors may include 'the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law.'" *Atl. Marine*, 571 U.S. at 62 n.6 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 & n.6 (1981)). "[D]istrict courts are not required to consider all of the public factors, they may choose to discuss only those that are relevant." *Turner*, 2021 WL 3673727, at *5. Plaintiffs "must bear the burden of showing that public-interest factors ***overwhelmingly*** disfavor a transfer." *Atl. Marine*, 571 U.S. at 67 (emphasis added). Here, however, no public-interest factors disfavor a transfer to the Northern District of California, much less overwhelmingly so.

As an initial matter, Plaintiffs do not, and cannot, identify any administrative difficulty that would flow from transferring this case to the Northern District of California. To the contrary, "'the Southern District of Florida has one of the busiest dockets in the country' and this factor weighs

in favor of [the other forum], even though this Court affords this factor little weight in the analysis." *McGinn v. Kerzner Int'l Ltd.*, 2012 U.S. Dist. LEXIS 190915, at *21 (S.D. Fla. Oct. 22, 2012) (Moore, J.) (quoting *Beaman v. Maco Caribe, Inc.*, 790 F. Supp. 2d 1371, 1379 (S.D. Fla. 2011)); *Oribe Hair Care*, 2017 WL 2059582, at *5 (same).

Nor is this a localized controversy. Though most of the named Plaintiffs allegedly reside in Florida, that carries little weight given that they purport to represent a ***nationwide*** class (Am. Compl. ¶ 302). *See Jones Real Estate, Inc. v. Avatel Techs., Inc.*, 2018 WL 1121537, at *4-5 (S.D. Fla. Mar. 1, 2018) (deference to plaintiff's choice of forum is reduced when plaintiff represents a nationwide class); *Elite Advantage, LLC v. Trivest Fund, IV, L.P.*, 2015 WL 4982997, at *9-10 (S.D. Fla. Aug. 21, 2015) (same). Indeed, this dispute is quintessentially ***national*** in character. The former President of the United States (along with other plaintiffs, including several non-Florida residents, Am. Compl. ¶¶ 19, 21, 23) is suing a California company for enforcing general policies that govern its global service and for the actions it took in regard to videos relating to, among other things, a global pandemic and a violent riot in the U.S. Capitol. *Id*. ¶¶ 6, 96, 164-69; *see also* ¶¶ 76, 158 (claiming injury to Former President Trump as a national political leader). Plaintiff alleges that YouTube did what it did at the behest of the President's political adversaries in Washington, D.C. *Id.* ¶¶ 3, 9, 66-67. Plaintiffs also seek to invalidate a federal statute (*id.* ¶¶ 255-66), obtain an injunction that constrains YouTube's content moderation nationwide (*id.* at 70), and install a monitor at the company's headquarters in California (*id.*). In short, this is a national dispute, and there is no special interest in having it decided in Florida. *See, e.g.*, *St. Francis Holdings, LLC v. Pawnee Leasing Corp.*, 2020 WL 6746329, at *4 (M.D. Fla. Nov. 17, 2020) (holding that a case against an out-of-state corporation "is not a localized controversy in which it is particularly important to resolve the claims in Florida").

There is also no need to keep the case in the Southern District of Florida so that this Court can apply Florida law. Plaintiffs principally allege violations of federal law—indeed, these were the only claims asserted in the original complaint—which "any district court" is competent to decide. *Zampa v. JUUL Labs, Inc.*, 2019 WL 1777730, at *3 (S.D. Fla. Apr. 23, 2019); *see also Dealtime.com v. McNulty*, 123 F.  Supp. 2d 750, 757 (S.D.N.Y. 2000) ("To the extent this action raises questions of federal law, either forum is equally capable of hearing and deciding those questions."); *Beckerman v. Heiman*, 2006 WL 1663034, at *9 (S.D.N.Y. June 16, 2006) ("[P]laintiffs have asserted federal claims, and federal courts are equally capable of adjudicating these."). And to the extent Plaintiffs have a basis to bring claims under Florida law, there is no reason why a federal court in California would be less competent to decide those claims than a federal court in Florida. *See Best Beach Getaways LLC v. TSYS Merch. Sols. LLC*, 2020 WL 9264809, at *2 (N. D. Fla. July 2, 2020) ("Florida's interest in preventing deceptive and unfair trade practices can be vindicated just as meaningfully by any given federal court[.]").[4] Indeed, federal courts in Florida routinely enforce forum selection clauses in cases involving FDUTPA claims. *See, e.g.*, *Best Beach Getaways*, 2020 WL 9264809, at *3 ("[T]his Court is not persuaded by the contention that a federal court in a different jurisdiction will be any less capable of applying FDUTPA than this Court would be."); *Diabetic Care Rx, LLC v. Express Scripts, Inc.*, 2018 WL 4537203, at *4 (S.D. Fla. July 2, 2018) ("FDUTPA claims are not per se exempt from the applicability of forum-selection clauses and . . . courts routinely order the transfer of such claims

---

[4] *See also Stokes v. Markel Am. Ins. Co.*, 2019 WL 8017457, at *5 (S.D. Fla. June 28, 2019) ("[A] district court in either Florida or Delaware is equally capable of applying the relevant law to the dispute."); *Trans Am Worldwide, LLC v. JP Superior Sols., LLC*, 2018 WL 3090394, at *10 (N.D. Fla. Apr. 30, 2018) ("[D]istrict courts often have little trouble applying the law of other states."); *Oribe Hair Care*, 2017 WL 2059582, at *5 ("[J]udges in the Southern District of New York are eminently qualified to apply either [New York or Florida law] in presiding over this case.").

in recognition of the parties' bargained-for contractual terms."), *report & recommendation adopted*, 2018 WL 4810147 (S.D. Fla. July 18, 2018); *EWT Holdings, Corp. v. Progressive Glob. Techs. Inc.*, 2006 WL 8433634, at *9 (S.D. Fla. May 26, 2006) ("[T]he fact that Plaintiff here included a Florida statutory claim for violation of FDUTPA does not confine venue to the Southern District of Florida.").[5]

In short, even if some public-interest factor were implicated, this would not be among the "rare[]" circumstances where public-interest factors can "defeat a transfer motion[.]" *Atl. Marine*, 571 U.S. at 64. As discussed above, this is far from the first case in which YouTube users have sued YouTube for removing content from its service or otherwise enforcing its content-moderation standards. Those cases are routinely transferred under the governing forum-selection clause. *See supra* at 12-14. This case should be as well.

## III.   CONCLUSION

For these reasons, YouTube respectfully asks the Court to grant its motion to transfer this case to the Northern District of California.

---

[5] *Accord Gordon*, 418 F. Supp. 3d at 1140-41 (holding that applying forum-selection clause to FDUTPA claim did not contravene Florida public policy); *Artier LLC v. Carre D'Artistes SAS*, 2017 WL 7732129, at *4 (S.D. Fla. Nov. 20, 2017) (enforcing a forum-selection clause to a FDUTPA claim); *Chicken Kitchen USA, LLC v. Tyson Foods, Inc.*, 2017 WL 6760811, at *4 (S.D. Fla. Oct. 4, 2017) (transferring a case that included a FDUTPA claim to the Northern District of Illinois); *Segal*, 763 F. Supp. 2d at 1368-70 (transferring FDUTPA case to Western District of Washington pursuant to forum-selection clause); *Davis*, 2011 WL 4063282, at *5 ("Courts have consistently enforced forum selection clauses in cases where plaintiffs asserted claims" like claims under FDUTPA and other Florida statutes); *Exceptional Urgent Care Center I, Inc., v. Protomed Medical Management Corp.*, 2009 WL 2151181, at *10 (M.D. Fla. July 13, 2009) (transferring a case including a FDUTPA claim based on a forum-selection clause covering "all disputes arising out of or relating to the agreement").

## LOCAL RULE 7.1(a)(3) CERTIFICATION

Pursuant to Local Rule 7.1(a)(3)(A), undersigned counsel hereby certifies that he has conferred with counsel for the Plaintiffs in this action in a good faith effort to resolve by agreement the issues raised by this motion, but has been unable to do so.

Respectfully submitted this 17th day of September, 2021.

**STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.**
150 West Flagler Street, Suite 2200
Miami, Florida 33130
Telephone:  (305) 789-3229
Facsimile:  (305) 789-2664

By:      */s/ Jay B. Shapiro*
Jay B. Shapiro, Esq.
Florida Bar No. 776361
jshapiro@stearnsweaver.com
Douglas L. Kilby, Esq.
Florida Bar No. 73407
dkilby@stearnsweaver.com
Abigail G. Corbett
Florida Bar No. 31332
acorbett@stearnsweaver.com

**WILSON SONSINI GOODRICH & ROSATI, P.C.**
1301 Avenue of the Americas, 40th Floor
New York, NY 10019
Telephone: (212) 999-5800
Facsimile: (212) 999-5801

Brian M. Willen, Esq.
(admitted *pro hac vice*)
bwillen@wsgr.com
Benjamin Margo, Esq.
(admitted *pro hac vice* )
bmargo@wsgr.com

**WILSON SONSINI GOODRICH & ROSATI, P.C.**
1700 K Street NW
Washington, DC 20006
Telephone: (202) 973-8800

> Steffen N. Johnson, Esq.
> (admitted *pro hac vice*)
> sjohnson@wsgr.com
> Meng Jia Yang, Esq.
> (admitted *pro hac vice*)
> mjyang@wsgr.com

**WILSON SONSINI GOODRICH & ROSATI, P.C.**
One Market Plaza
Spear Tower, Suite 3300
San Francisco, CA 94105
Telephone: (415) 947-2000

> Amit Q. Gressel, Esq.
> (admitted *pro hac vice*)
> agressel@wsgr.com

*Counsel for Defendants YouTube, LLC and Sundar Pichai*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 17th day of September, 2021, I electronically filed a copy of the foregoing document with the Clerk of the Court using CM/ECF, which sent a notice of electronic filing to all counsel of record.

By: <u>*/s/ Jay B. Shapiro*</u>
Jay B. Shapiro