**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

DONALD J. TRUMP, the Forty-Fifth President
of the United States, KELLY VICTORY,
AUSTEN FLETCHER, AMERICAN
CONSERVATIVE UNION, ANDREW
BAGGIANI, MARYSE VERONICA JEAN-
LOUIS, NAOMI WOLF AND FRANK
VALENTINE, INDIVIDUALLY, AND ON
BEHALF OF THOSE SIMILARLY
SITUTATED,

            Plaintiffs,

     v.

YOUTUBE, LLC and SUNDAR PICHAI,

          Defendants.

Civil Action No. 1:21-cv-22445-KMM

**PLAINTIFF'S RESPONSE TO DEFENDANTS'**
**YOUTUBE, LLC, AND SUNDAR PICHAI'S**
**MOTION TO TRANSFER**

## **TABLE OF CONTENTS**

TABLE OF CONTENTS............................................................................................................. i

TABLE OF AUTHORITIES .................................................................................................... ii

INTRODUCTION ..................................................................................................................... 1

ARGUMENT .............................................................................................................................. 1

   I.  DEFENDANT'S FORUM SELECTION CLAUSE DOES NOT APPLY TO PLAINTIFF
      DONALD J. TRUMP........................................................................................................ 1

   II.  NO ENFORCEABLE FORUM SELECTION CLAUSE EXISTS AS A MATTER OF ......
       FACT AND LAW.............................................................................................................. 5

   III.  THE FORUM SELECTION CLAUSE IS AMBIGUOUSLY DRAFTED ........................ 7

   IV.  THE CLAIMS DO NOT ARISE FROM THE TERMS.................................................. 10

   V.  PUBLIC INTEREST COMPELS THAT THE COURT RETAIN JURISDICTION......... 13

   VI.  RETENTION IS APPROPRIATE UNDER 28 U.S.C. § 1404(A)................................... 18

CONCLUSION......................................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Ageless Found., Inc. v. Quincy Invs., Corp.*,
  No. 06-20293-CIV, 2006 WL 8432572 (S.D. Fla. Aug. 15, 2006) .......................................... 8

*Ahearn v. Mayo Clinic*, 180 So. 3d 165 (Fla. 1st DCA 2015) .................................................... 13

*Am. Online, Inc., v. Pasieka*, 870 So.2d 170 (1st DCA 2004).................................................... 12

*America Online, Inc., v. Booker*, 781 So.2d 423 (3rd DCA 2001) ............................................ 13

*Atlantic Marine Constr. Co. v. United States Dist. Court*, 571 U.S. 49 (2013)............ 7, 14, 18, 19

*Caribbean Gardens Condo. Ass'n, Inc. v. Markel Ins. Co.*,
  No. 1:16-CV-21329-UU, 2016 WL 11201233 (S.D. Fla. May 12, 2016) ............................ 7, 8

*Citro Florida, Inc. v. Citrovale, S.A.*, 760 F.2d 1231 (11th Cir. 1985) ........................................ 8

*Contractor's Mgmt. Sys. of N.H., Inc., v. Acree Air Conditioning, Inc.*,
  799 So.2d 320 (2nd DCA 2001) ..................................................................................... 13

*Davison v. Randall*, 912 F.3d 666 (4th Cir. 2019)..................................................................... 5

*Day v. Le–Jo Enters., Inc.*, 521 So. 2d 175 (Fla. 3d DCA 1988) ................................................ 12

*DEUTZ Corp. v. City Light & Power, Inc.*,
  No. 1:05-CV-3113-GET, 2006 WL 8432920 (N.D. Ga. Aug. 15, 2006) ................................. 8

*Dura-Cast Prod., Inc. v. Rotonics Mfg., Inc.*,
  No. 810-CV-1387-T-24AEP, 2010 WL 3565725 (M.D. Fla. Sept. 10, 2010)........................ 10

*e-ventures Worldwide, LLC, v. Google, Inc.*,
  2017 WL 2210029 (M.D. Fla. February 8, 2017 ...................................................................... 18

*First Pacific Corp. v. Sociedade de Empreendimentos E Construcoes, Ltda.*,
  566 So. 2d 3, 15 Fla. Law W. D 1285 (Fla. 3d DCA 1990)...................................................... 12

*Hawaii v. Trump*, 859 F.3d 741 (9th Cir. 2017) ......................................................................... 3

*Howell v. Tanner*, 650 F.2d 610 (5th Cir., Unit B 1981)............................................................ 20

*Keaty v. Freeport Indonesia, Inc.*, 503 F.2d 955 (5th Cir. 1974) ................................................ 9

*Knight First Amdt. Inst. at Columbia Univ. v. Trump*, 928 F.3d 226 (2d Cir. 2019) ....... 4, 5, 6, 17

*Krenkel v. Kerzner Int'l Hotels Ltd.*, 579 F.3d 1279 (11th Cir. 2009) ........................................ 14

*Loomer v. Facebook, Inc.*,
  No. 19-CV-80893, 2020 WL 2926357 (S.D. Fla. Apr. 13, 2020) ............................................ 17

*Malwarebytes, Inc. v. Enigma Software Grp. USA, LLC*, 141 S. Ct. 13 (2020)........................... 18

*Management Computer Controls, Inc. v. Charles Perry Constr., Inc.*, 743 So.2d 627 (1st DCA
  1999)..................................................................................................................... 11, 12

*Manuel v. Convergys Corp.* 430 F.3d 1132 (11th Cir. 2005) ..................................................... 19

*Mindbasehq LLC, v. Google, LLC*, 2021 U.S. Dist. Lexis 91089 (S.D. Fla. May 12, 2021) ....... 20

*Minnesota State Bd. for Cmty. Colleges v. Knight*, 465 U.S. 271 (1984)...................................... 6

*Packingham v. North Carolina*, 137 S. Ct. 1730 (2017) ................................................. 2, 3, 5, 17

*Pincus v. Speedpay, Inc.*, 161 F. Supp. 3d 1150 (S.D. Fla. 2015) ............................................. 12

*PNR Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So2d 773 (Fla. 2003)............................................. 12

*Reno v. Am. C.L. Union*, 521 U.S. 844 (1997)......................................................................... 17

*Robinson v. Giamarco & Bill, P.C.*, 74 F.3d 253 (11th Cir. 1996) ............................................ 20

*SAI Ins. Agency, Inc., v. Applied Sys*, 858 So.2d 401 (1st DCA 2003) ........................................ 13

ii

*Seaman v. Priv. Placement Cap. Notes II, LLC*,
  No. 16-CV-00578-BAS-DHB, 2017 WL 1166336 (S.D. Cal. Mar. 29, 2017)........................ 15
*Stewart Organization, Inc., v. Ricoh Corp.*,
  810 F.2d 1066 (11th Cir. 1987), *aff'd*, 487 U.S. 22 (1988) ................................. 10, 11
*Travelcross, S.A. v. Learjet, Inc.*,
  No. 10-61842-CIV, 2011 WL 13214118 (S.D. Fla. Mar. 28, 2011)................................ 7, 9, 10
*Trump v. Int'l Refugee Assistance Project*,
  No. 16-1436, 2017 WL 2722580 (U.S. June 26, 2017) ........................................... 3
*World Vacation Travel v. Brooker*, 799 So.2d 410 (3rd DCA 2001) ........................................... 13

**Statutes**

28 U.S.C. § 1404 ....................................................................................... 1, 10, 18
28 U.S.C. § 2671 ....................................................................................... 7
31 U.S.C. § 1341 ....................................................................................... 5, 7
36 C.F.R § 1220 ....................................................................................... 5, 17
41 C.F.R. § 1 ....................................................................................... 5
44 U.S.C. § 2202 ....................................................................................... 4
44 U.S.C. § 2904 ....................................................................................... 5
47 U.S.C. § 230 ....................................................................................... 18
Florida Deceptive and Unfair Trade Practices Act,
  Florida Statutes Chapter 501, Part II ................................ 1, 11, 12, 13, 14, 15, 18, 19
Florida Stop Social Media Censorship Act........................................ 11, 14, 15, 18, 19

**Other Authorities**

The Antideficiency Act................................................................................. 7
The Federal Tort Claims Act ........................................................................ 7
The Presidential Records Act of 1978 ........................................................... 4

## INTRODUCTION

Plaintiffs Donald J. Trump ("Plaintiff"), Kelly Victory, Austen Fletcher, American Conservative Union, Andrew Baggiani, Maryse Veronica Jean-Louis, Naomi Wolf, and Frank Valentine, individually, and on behalf of those similarly situated (collectively, "Plaintiffs"), respectfully submit this Memorandum of Law in Opposition to the Motion by Defendants YouTube, LLC ("YouTube") and Sundar Pichai (collectively, "Defendants") pursuant to 28 U.S.C. § 1404, dated September 1, 2021, to transfer venue to the United States District Court for the Northern District of California ("Motion").

As set forth herein, Defendants' Motion should be denied on six grounds. First, YouTube's Terms of Service ("TOS"), including the forum selection clause upon which Defendants' Motion relies, do not apply to governmental entities, including plaintiff Donald J. Trump ("Plaintiff") as Forty-Fifth President of the United States. Second, the forum selection clause in YouTube's TOS is unenforceable. Third, under Florida law, the forum selection clause is ambiguous and should be construed against Defendant. Fourth, Plaintiffs' claims in the instant action do not arise from the specific terms of the clause. Fifth, in the event that the Court deems the forum selection clause to be applicable, there is a strong public interest in keeping the claims under the Florida Deceptive and Unfair Trade Practices Act, Florida Statutes Chapter 501, Part II ("FDUTPA"), in Florida. Sixth, as the forum selection clause is inapplicable, Defendants' Motion should be decided by application of 28 U.S.C. § 1404(a), and under its parameters, this matter should remain before the Court.

## ARGUMENT

**I.    YOUTUBE'S FORUM SELECTION CLAUSE
DOES NOT APPLY TO PLAINTIFF DONALD J. TRUMP**

Defendants' Motion should be denied because the forum selection clause in YouTube's TOS does not apply to Plaintiff, who at all times relevant to this dispute was the sitting President

of the United States and the head of the Executive Branch of the federal government. Defendants'
Motion fails to disclose to the Court that the forum selection clause that Defendants rely on therein
does not apply to federal entities using YouTube's services in an official capacity, as was Plaintiff
on January 6, 2021.

The federal government recognizes that federal entities using social media platforms do
not have the authority to bind themselves to the standard choice of forum, choice of law, or choice
of venue terms that the major social media platforms have in their terms of service. In response to
this, the federal government has issued guidelines to be used by federal entities that enter into User
Agreements with social media companies, including YouTube. As far back as 2009, YouTube had
entered into a User Agreement with the National Archives and Records Administration, an agency
of the Executive Branch of government, that excluded the choice of forum, choice of law, and
choice of venue clauses found in the general User Agreement employed by YouTube. (Exhibit 1,
Content Hosting Agreement for Federal Entities.)

The federal government has reiterated its position that federal entities cannot contractually
bind themselves to social media companies and were encouraged to craft TOS agreements specific
to their needs. (Exhibit 2, Federal-Compatible Terms of Service Agreements.) The Content
Hosting Agreement For Federal Entities, a boilerplate agreement to be used between social media
companies, and federal entities, provides "that any disputes under these agreements will be
governed by and interpreted and enforced in accordance with the laws of the United States of
America without reference to conflict of laws." (Ex. 1.) The guidelines in Exhibit 2 make it clear
that there should be no choice of forum, choice of law, or choice of venue clauses in the Agreement,
and that all disputes arising under these agreements "will be governed by . . . the law of the United
States of America without reference to conflict of laws." (Ex. 2.) Curiously, the Director of
YouTube's Government Affairs and Policy Team failed to acknowledge in her Declaration in

support of Defendants' Motion the existence of any agreements with the federal government separate and apart from YouTube's TOS.

On January 20, 2017, when Plaintiff was sworn in as Forty-Fifth President of the United States, he continued using the same YouTube account that he had been before entering office. (Amended Complaint dated July 27, 2021, Doc. 21 ("A.C.") ¶¶ 48, 52-58.) As such, Plaintiff's YouTube account, like his other social media accounts, became one of the White House's main vehicles for conducting official business.) *Knight First Amdt. Inst. at Columbia Univ. v. Trump*, 928 F.3d 226, 232 (2d Cir. 2019); (Exhibit 3, Stipulation filed September 28, 2017 ("Stipulation") ¶¶ 32, 37.) For example, Plaintiff repeatedly used his channel to report to the Citizens of the United States on virtually every major aspect of Presidential activity, including but not limited to national emergencies such as hurricanes, meetings with foreign leaders, and to inform America on a weekly basis as to the Administration's positions on health care, immigration, foreign affairs, and other equally important matters affecting the lives of all Americans. (A.C. ¶¶52-58; *see* Ex. 3 ¶ 38.) Plaintiff also used his account to announce, describe, and defend his policies; to promote his Administration's legislative agenda; to announce official decisions; to publicize state visits; and for other official statements. (A.C. ¶¶52-58; Ex. 3 ¶ 38.)

In 2017, federal agencies and the federal courts began treating Plaintiff's statements on social media, which were deemed public forums for interactive discussion about government business, as official statements. The courts view government use of large digital platforms similarly, with respect to the First Amendment and public access. *Packingham v. North Carolina*, 137 S. Ct. 1730, 1732 (2017) ("it is enough to assume that the law applies to commonplace social networking sites like Facebook, LinkedIn, and Twitter" and, presumably, YouTube.) The National Archives and Records Administration has advised the White House that the President's tweets from @realDonaldTrump, like those from @POTUS, are official records that must be preserved

under the Presidential Records Act. The Ninth Circuit cited one of the President's tweets in striking down Executive Order 13,780, the Order that temporarily suspended nationals of certain countries from entering the United States. *Hawaii v. Trump*, 859 F.3d 741, 773 n.14 (9th Cir. 2017), *cert. granted sub nom., Trump v. Int'l Refugee Assistance Project*, 137 S.Ct. 2080 (2017). In citing the tweet, the Ninth Circuit observed that the White House Press Secretary had indicated that the President's tweets should be treated as official statements. *Id.* In accordance with the holding in *Packingham*, Plaintiff's uploads to YouTube are also official content of the federal government.

Accordingly, Plaintiff's YouTube account consists of "official responses" for the purposes of The Presidential Records Act of 1978 and, like Plaintiff's other social media accounts, has been treated as such and relied upon by politicians and foreign heads of state. (*See* Ex. B ¶ 40). As a result, as the Second Circuit determined with respect to Plaintiff's Twitter Account, at all times relevant to this action, Plaintiff's account was not privately owned by Plaintiff or by YouTube, but was subject to "public ownership." *Id.* (citing 44 U.S.C. § 2202). At all times relevant to this action, Plaintiff was the sitting President of the United States, and used his social media accounts and YouTube's services in that capacity as a public forum. *Knight First Amdt. Inst. at Columbia Univ.*, 928 F.3d at 226. Further, he could not accept the controlling law, jurisdiction, or venue clauses contained in YouTube's TOS without input from other agencies, including the National Archives and Records Administration, in accordance with the requirements of the Federal Acquisition Regulation. *See* 44 U.S.C. § 2904, *et seq.*; 36 C.F.R § 1220, *et seq.*; *see also* 31 U.S.C. § 1341; 41 C.F.R. § 1, *et seq.*

YouTube's TOS relied upon by Defendants in their Motion include guidelines relating only to individuals and businesses, not governmental entities. As of January 12, 2021, YouTube had not further revised its TOS with any kind of "government entity" exemption for choice of law, forum or venue, or amended its policy regarding violence and physical harm. As a result, under

4

YouTube's Content Hosting Agreement for Federal Entities, the forum selection clause contained in YouTube's TOS for individuals and businesses does not apply to Plaintiff. (Ex. 2.)

## II.   NO ENFORCEABLE FORUM SELECTION CLAUSE EXISTS AS A MATTER OF FACT AND LAW

One thing is undeniably clear: President Trump's social media accounts were government accounts, and not private ones, when he was censored on January 12, 2021. In *Knight First Amdt. Inst. at Columbia Univ.*, 928 F.3d at 236, the Second Circuit held, "the [social media] account is not private." [1] Incongruously, YouTube does not even reference this adjudication in determining the status of President Trump's social media accounts. The Supreme Court treats large social media companies like YouTube, their function in society and implications on the First Amendment, similarly: "it is enough to assume that the law applies to commonplace social networking sites like Facebook, LinkedIn, and Twitter." *Packingham v. North Carolina*, 137 S. Ct. 1730, 1732 (2017).

*Knight* held that President Trump's social media platforms were government accounts, and that he could not constitutionally limit access to this public forum, "[t]he salient issues in this case arise from the decision of the President to use a relatively new type of social media platform . . . We also conclude that once the President has chosen a platform and opened up its interactive space to millions of users and participants, he may not selectively exclude those whose views he disagrees with." *Knight*, 928 F.3d at 226, 234.  Accordingly, YouTube's argument fails—either it expressly contracted to omit a forum selection clause given the constraints of federal law, or it fails otherwise to show a valid contract with the Plaintiff.

[1] The Court commandeered the President's entire account, holding in 2019, "[t]his litigation concerns what the Account is now." *Id*. at 231 (emphasis added.)  Consequently, the court held the account constituted a public forum. *Id*. *See also, Davison v. Randall*, 912 F.3d 666 (4th Cir. 2019) (similarly to the ruling in *Knight*, social media accounts where the government interacts with the public about official business are government accounts creating a public forum).

5

In *Knight*, the Second Circuit evaluated President Trump's entire Twitter account, its use, various views on what it was, including from numerous *amici,* with the government representing President Trump's interests in the protracted litigation where "the government conceded that the Account is not 'independent of [Trump's] presidency.'" *Knight*, 928 F.3d at 234 (brackets in the original). Ultimately, the Court affirmed the trial court's declaratory judgment that the account was a government account, irrespective of the fact that the government control over the property was temporary. *Id*. at 235. Under the declaratory judgment, Plaintiff was expressly prevented from using his social media as he had been, dictating the new terms of his social media usage, given the First Amendment. *Id*. YouTube clearly stands in the same position as Twitter as to the holding in *Knight* as it applied to his social media accounts, ("[the President's account] has interactive features open to the public, making pubic interaction a prominent feature of the account . . . the account is not private.") *Id*. at 236.

Similar to the facts here, the Court used the fact that Plaintiff's statements were archived with the National Archives to demonstrate that it already was a government account before it was declared as such by the trial court in 2018. *Id*. at 235. Just as the public has "no constitutional right to force the government to listen to [its] views," as asserted in *Knight*, YouTube has no right to force a private contract on the federal government. *Id*. at 238 (citing, *Minnesota State Bd. for Cmty. Colleges v. Knight*, 465 U.S. 271, 283 (1984)). Several laws and regulatory procurement processes prevent the imposition of private contracts upon the federal government.[2] YouTube has not shown when and where its purported Contract was entered, further evidencing the lack of any valid forum selection clause. Here, contrary to YouTube's assertions, it has made no effort whatsoever to notify Users of its sporadic and frequent changes, irrespective of the changing conditions of Plaintiffs,

---

[2] *See generally* 31 U.S.C. § 1341, *The Antideficiency Act*; 28 U.S.C. § 2671, *The Federal Tort Claims Act*.

such as is the case with Plaintiff. Defendants' instant Motion does not show the existence of any kind of contract that YouTube had with the government. In fact, the TOS described in Defendants' Motion show that the word "government" is not mentioned one time. YouTube cannot plausibly assert that it has an enforceable forum selection clause because the burden is on it to negotiate, "bargain," and achieve settled "legitimate expectations" as to same, all of which are absent here. *Atlantic Marine Constr. Co. v. United States Dist. Court*, 571 U.S. 49, 63 (2013).

## III. THE FORUM SELECTION CLAUSE IS AMBIGUOUSLY DRAFTED

YouTube's forum selection clause is ambiguously drafted. In cases such as these involving the question of transfer, any ambiguity is construed against the drafter. *Travelcross, S.A. v. Learjet, Inc.*, No. 10-61842-CIV, 2011 WL 13214118, at *1 (S.D. Fla. Mar. 28, 2011). As such, the clause is to be construed against the drafter, YouTube, and the Court may properly deem this a permissive rather than a mandatory forum selection clause.

Federal courts interpret forum selection clauses pursuant to federal common law standards, and courts apply ordinary contract principles. *Caribbean Gardens Condo. Ass'n, Inc. v. Markel Ins. Co.*, No. 1:16-CV-21329-UU, 2016 WL 11201233, at *1 (S.D. Fla. May 12, 2016). Federal, Florida and California law are all in general harmony in the application of the same principles of contract law to forum selection clauses. *Ageless Found., Inc. v. Quincy Invs., Corp.*, No. 06-20293-CIV, 2006 WL 8432572, at *5 (S.D. Fla. Aug. 15, 2006).

Permissive clauses allow for actions to be brought in a certain location without requiring it, while mandatory clauses dictate exclusive forums for a lawsuit. *Caribbean Gardens Condo. Ass'n*, 2016 WL 11201233, at *1. Importantly, when a court cannot determine if a forum selection clause is permissive or mandatory, the clause is deemed ambiguous, and construed against the drafter. *Id.* at *4; *Citro Florida, Inc. v. Citrovale, S.A.*, 760 F.2d 1231 (11th Cir. 1985). Furthermore, before a court can deem a clause to be mandatory, it must conclusively find that the

7

clause dictates an exclusive forum for litigation. *DEUTZ Corp. v. City Light & Power, Inc.*, No. 1:05-CV-3113-GET, 2006 WL 8432920, at *2 (N.D. Ga. Aug. 15, 2006).

The scope of forum selection clauses are, therefore, driven by the precise wording of the clause itself and YouTube's forum selection clause reads as follows:

> All claims arising out of or relating to these terms or the Service will be governed by California law, except California's conflict of law rules, will be litigated exclusively in the federal or state courts of Santa Clara County, California, USA. You and YouTube consent to personal jurisdiction in those courts.

(Declaration of A. Veitch in support of Defendants' Motion to Transfer ("Veitch Dec."), Exhibit A, at 7.) YouTube's forum selection clause contains contradictory mandatory and permissive language. While it references exclusivity in that "all claims . . . will be litigated exclusively" in California, it then proceeds to state that parties to this clause "consent to personal jurisdiction in those courts."

By using "consent," Defendants suggest that Users cannot raise an objection to lawsuits filed in California, while leaving the door open to Defendants initiating actions in different courts. This combination of exclusive jurisdiction ("litigated exclusively") with permissive language ("consent to personal jurisdiction") creates an ambiguity in the clause which is fatal to its effectiveness. As YouTube drafted the forum selection clause, this ambiguity is to be read against YouTube, and this Court should deem the clause to be permissive. *Keaty v. Freeport Indonesia, Inc.*, 503 F.2d 955, 957 (5th Cir. 1974) (holding that when analyzing conflicting permissive and mandatory language in a forum selection clause the, "Court adopted the traditional rule whereby 'an interpretation is preferred which operates more strongly against the party from whom [the words] proceed.'").

The flaw in YouTube's forum selection clause is clearly demonstrated by Judge Jordan's analysis of a similar clause in *Travelcross, S.A.*, 2011 WL 13214118 at *1. The clause in that case read as follows (emphasis added):

> This Agreement shall be governed by and interpreted and construed in accordance with the substantive laws of the State of Kansas, U.S.A., excluding any conflicts of law provisions thereof. **The courts of Kansas shall have exclusive jurisdiction** to hear and determine all claims, disputes, actions or suits which may arise hereunder. **[Travelcross] expressly consents to jurisdiction and venue** in the state and federal courts of Kansas for any claims or disputes arising hereunder.

*Id.* at *2.   Addressing the issue of exclusive jurisdiction, Judge Jordan held that "exclusive jurisdiction" as used in the clause did not mandate venue in Kansas, as he held that "jurisdiction" and "venue" were separate concepts, and that the clause did not specify that venue was required in Kansas. Importantly, Judge Jordan went on to hold that:

> The next sentence—"[Travelcross] expressly consents to jurisdiction and venue in the state and federal courts of Kansas for any claims or disputes arising hereunder"—is not apparently mandatory. **That Travelcross consents to venue and jurisdiction in Kansas does not require that Kansas courts be the exclusive forum or exclusive venue. Nowhere are words like "shall" or "only" used**. . . .  **The agreement's forum-selection clause is simply murky and ambiguous. Hence, I must read the clause against the drafter, which is Learjet.** . . .  After interpreting the clause against the drafter, I hold that the forum-selection clause here is permissive.  And, hence, Learjet's motion to dismiss for improper venue is denied.

*Id.* at *2 (emphasis added); *see also Dura-Cast Prod., Inc. v. Rotonics Mfg., Inc.*, No. 810-CV-1387-T-24AEP, 2010 WL 3565725, at *2 (M.D. Fla. Sept. 10, 2010) ("The parties must do more than merely consent to jurisdiction in a particular forum in order for the FSC to be interpreted as mandatory; instead, the parties must use language that clearly expresses the exclusivity of the designated forum.") While Judge Jordan denied the transfer motion on the basis of a mandatory

9

forum selection clause, he nevertheless transferred the case under the traditional private/public analysis of 28 U.S.C. § 1404(a) (Point VI, *infra*.)

As with the clause at issue in *Travelcross*, *S.A.*, YouTube's forum selection clause contains contradictory terms. It at once combines language suggesting an exclusive forum with consensual language indicating that it is permissive in nature. Plaintiffs respectfully submit that this combination of exclusive and permissive language in the forum selection clause renders it ambiguous, and that thereby the Court should deny Defendants' Motion.

## IV.   THE CLAIMS DO NOT ARISE FROM THE TERMS

If the Court finds the forum selection clause is not ambiguous and is mandatory, it must still find that the claims arise from within the scope of the clause. *Stewart Organization, Inc., v. Ricoh Corp.*, 810 F.2d 1066 (11th Cir. 1987), *aff'd*, 487 U.S. 22 (1988). In *Stewart*, the Eleventh Circuit analyzed a contract where the clause referred, "to *any* 'case or controversy arising under or in connection with this Agreement.'" *Id.* at 1070 (emphasis in original). The *Stewart* court held that where a clause referred to "any" case or controversy arising under or in connection with this agreement, this would include all causes of action, directly or indirectly related to the business relationship established by the contract. *Id*. By its terms, Defendant's forum selection clause is more limited than that addressed in *Stewart*. Defendant's clause is limited to "[a]ll claims arising out of or relating to these terms or the Service." Defendant defines "terms" as the "Terms of Service." (Veitch Dec. at 1.) "Service" is in turn defined as, "the products, services and features we make available to you as part of the platform." (Veitch Dec. at 1.) By its terms, the forum selection clause is limited to "claims arising out of or relating to" the "terms or the Service." This in turn means the clause is limited to claims pertaining to "the products, services and features we make available to you as part of the platform." Unlike the contract in *Stewart*, this clause does not refer to *any* case or controversy arising under or connected to an agreement,

but to those claims related to the services YouTube has made available to a User. Plaintiffs' claims are not based on their use of Services that YouTube made available to them, but rather Defendants' deceptive practices towards Florida consumers. Plaintiffs' FDUTPA and SSMCA[3] claims relate not to their access to and use of the Services, but Defendants' deceptive practices towards all current and prospective Users in Florida.

Numerous Florida courts have analyzed forum selection clauses in cases have not encompassed FDUTPA actions. The leading case on the scope of such clauses to FDUTPA is *Management Computer Controls, Inc. v. Charles Perry Constr., Inc.*, 743 So.2d 627 (1st DCA 1999). The scope of the clause in that case encompassed, "[a]ny action . . . arising out of this Agreement . . . " *Id.* at 629. The plaintiff brought several claims related to breach of contract, but the court held that the FDUTPA claim was an independent claim, outside the scope of the forum selection clause, stating:

> The unfair trade claim is an independent statutory claim that is severable from all the remaining claims. It does not arise out of the contract, nor does it exist solely for the benefit of the parties to the contract. . . . The use of the venue clause as a defense to the statutory claim in this case would undermine the effectiveness of the statute.

*Id.* at 632 (citing *First Pacific Corp. v. Sociedade de Empreendimentos E Construcoes, Ltda.*, 566 So. 2d 3, 15 Fla. Law W. D 1285 (Fla. 3d DCA 1990)).

Akin to *Management Computer Controls,* the causes of action in this case do not, "arise out of the contract, nor [do they] exist solely for the benefit of the parties to the contract." Plaintiffs' action seeks injunctive relief that is no less pertinent to themselves as it is to each Florida User of YouTube's services, and, in fact, every Floridian who may be tempted to rely on YouTube's deceptive policy statements.

---

[3] Violations of the SSMCA are deemed to be violations of FDUTPA as well; unless otherwise noted, henceforth the use of "FDUTPA" will necessarily encompass the SSMCA as well.

This goes to the core function of FDUTPA. Courts have long held that FDUTPA must be "construed liberally" to "protect the consuming public and legitimate business enterprises" from unfair or deceptive business practices. *Id.* § 501.202; *see also Pincus v. Speedpay, Inc.*, 161 F. Supp. 3d 1150, 1157 (S.D. Fla. 2015) ("Courts have regarded FDUTPA as 'extremely broad'" (*quoting Day v. Le–Jo Enters., Inc.*, 521 So. 2d 175, 178 (Fla. 3d DCA 1988)). The Florida Supreme Court defines deception as "a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *PNR Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So2d 773 (Fla. 2003).

Plaintiffs' FDUTPA claims are, by definition, claims which must speak to a larger public interest, and the relief sought here – injunctive relief regarding practices and statements to the public at large – is necessarily of benefit to parties other than a specific plaintiff. The larger public benefit of FDUTPA actions runs through the decisions where courts have held a FDUTPA claim outside the scope of a forum selection clause. *E.g. Am. Online, Inc., v. Pasieka*, 870 So.2d 170 (1st DCA 2004) ("And as indicated in *Management Computer*, the FDUTPA does not exist solely for the benefit of the individual parties, and is instead designed to afford a broader protection to the citizens of Florida."). In *Contractor's Mgmt. Sys. of N.H., Inc., v. Acree Air Conditioning, Inc.*, 799 So.2d 320 (2nd DCA 2001) the court reviewed a clause encompassing, "[a]ny lawsuit litigation or arbitration concerning this Agreement . . . " and held that as to the FDUTPA claim:

> We affirm on the venue issue because the forum selection clause in the license agreement does not apply to the claim that CMS violated the Little FTC Act. . . . That claim does not arise from the agreement, nor does it exist solely for the benefit of the parties to the agreement. . . .

*Id.* at 321 (citations omitted).[4]

---

[4] It should be noted that several Florida courts have held that a forum selection clause did mandate transfer, but numerous such cases the clause's contractual language was far broader than in the case before the Court. *See, e.g., SAI Ins. Agency, Inc., v. Applied Sys*, 858 So.2d 401, 402 (1st DCA 2003) (contract language stated, "any action or

The case before the Court is independent of any agreement that may exist between Plaintiffs and Defendants, and the relief sought is of benefit to countless parties outside of this lawsuit. Standing to bring a claim for injunctive relief under Florida Statutes § 501.211(1) is granted to anyone who has been "aggrieved," a term which has been defined as a person, "angry or sad on grounds of perceived unfair treatment," and, importantly, there is no requirement of financial injury. *Ahearn v. Mayo Clinic*, 180 So. 3d 165, 172 (Fla. 1st DCA 2015). Plaintiffs' standing is not related to any breach of any prior agreement they may have had with Defendants, but rather Defendants' ongoing deceptive practices towards their Users.

The relief sought is not retrospective relief for damages or other wrongs from some ostensible "breach" of the Terms by Defendants prior to the initiation of this lawsuit, but rather their actions towards the public at large on a daily, continuing basis.

## V.    PUBLIC INTEREST COMPELS THAT THE COURT RETAIN JURISDICTION

Public interest compels that the Court retain jurisdiction in this action. A strong public policy can outweigh even a valid forum selection clause, negotiated at arm's length between fully informed parties, which Defendants concede in their Motion is not the case in this action. *See Krenkel v. Kerzner Int'l Hotels Ltd.*, 579 F.3d 1279, 1281 (11th Cir. 2009); (Motion at 3). The Supreme Court has recognized that such factors include "the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." *Atlantic Marine Constr. Co. v. United States Dist. Court*, 571 U.S. 49, 62 n.6 (2013).

This case should remain before the Court because the FDUTPA claims in Counts III and IV allege what is in essence a localized controversy. The relief sought here will primarily affect

---

claim between the parties"); *World Vacation Travel v. Brooker*, 799 So.2d 410, 411 (3rd DCA 2001) (contract language stated, "[i]n case of any controversy or dispute in the interpretation of this agreement"); *America Online, Inc., v. Booker*, 781 So.2d 423, 424 n.1 (3rd DCA 2001) (contract language stated, "any claim or dispute with AOL").

the way Defendants engage in business in Florida. No relief this Court may grant under FDUTPA will affect any California consumers. The impact on California will be limited to a burden on software engineers and marketers to ensure that YouTube's practices in Florida are compliant with Florida law. Plaintiffs respectfully submit that as California has no particular interest in how Florida regulates businesses within its borders, California courts should not be burdened with enforcing Florida's laws, and matters concerning Florida consumers should not be vested in the care of Californian jurors.

Under *Atlantic Marine*, a valid forum selection clause can be ignored in "exceptional cases." *Id.* at 64. Plaintiffs submit that this is, in fact, an exceptional case. Plaintiff was removed from Defendants platform while sitting as President of the United States. As a resident of Florida, Plaintiff has been unable to re-establish his account with Defendants. Plaintiff is uniquely suited to bring the FDUTPA claim of Count III, and Plaintiffs have clear standing to bring the SSMCA claim of Count IV, as well as the constitutional claims in Counts I and II. As to Count III, the Plaintiff need not establish any contractual relationship nor any financial loss to have standing – merely his status as an aggrieved party grants him standing. Few other jurisdictions have such generous standing provisions for injunctive relief. Furthermore, unlike FDUTPA, Florida's SSMCA is possibly the first social media law in the nation of its kind, and there is no parallel law to SSMCA in California. Count III is a localized issue given the Florida Legislature's clear preference to ease of standing to obtain injunctive relief on behalf of Florida consumers, and the Florida Legislature's enactment of the SSMCA is similarly an example of how Count IV is truly a localized controversy.

*Seaman v. Priv. Placement Cap. Notes II, LLC*, No. 16-CV-00578-BAS-DHB, 2017 WL 1166336, at *1 (S.D. Cal. Mar. 29, 2017) is instructive as to when a Court may retain jurisdiction in an extraordinary case, even where there is a valid forum selection clause. There, the Securities

14

and Exchange Commission brought a claim for violations of the securities laws, and obtained a receiver on the subject entities. *Id.* at *1-*2. Facing a binding forum selection clause mandating transfer to Colorado, the California court nevertheless retained jurisdiction, stating that the "Court finds that this is the rare and unusual case where public interest factors defeat transfer to the contractually designated forum." *Id*. at *7. It first held that transfer would generate additional costs to the receiver, which would deplete potential recovery for the victims of Defendants' practices. *Id.* The Court went on to state as an additional factor for retaining jurisdiction:

> Second, the Southern District of California has a strong local interest in this controversy. The SEC Enforcement Action from which this case stems was filed in this District. The Receivership Entities' principal places of business are in this District. The largest concentration of defrauded investors is in this District. **The Court raises these points not to suggest this District is a more convenient forum but rather to emphasize that the fallout and damage from the alleged fraudulent conduct is overwhelmingly concentrated in this District, as opposed to the District of Colorado**.

*Id*. (emphasis added). As with the court in *Seaman* , this Court similarly confronts an issue where it is not so much the convenience of the District which should drive the Court's decision to retain this case, as the overwhelming Florida interest in the case. Defendants have availed themselves so fully of this forum, and infiltrated the daily lives of so many of its citizens, that the State of Florida has taken a special interest in protecting those citizens from Defendants' documented abuses. Under Counts III and IV, Defendants' deceptive acts took place within Florida, and all of the potential relief is to be directed to Florida consumers and the means and methods by which Defendants will engage in business in Florida. Any California nexus is negligible at most, particularly in light of the fact that California has not demonstrated the same interest in protecting its citizens as Florida.

15

More generalized policy interests also compel that the Court retain jurisdiction. Parties to contracts are entitled to clarity and full disclosure about the nature and scope of the agreements into which they enter. Whistle blowers, psychologists and tech ethicists have gone on the record to document that social media companies intentionally engineer their software to be addictive, and to create dependency among their Users.  For example, in testimony before the House Committee on Technology and Commerce on September 24, 2020, former Facebook Director of Monetization Tim Kendall testified that in engineering Facebook, "we sought to mine as much human attention as possible and turn into historically unprecedented profits. To do this, we didn't simply create something useful and fun. We took a page from Big Tobacco's playbook, working to make our offering addictive at the outset." (A true and correct copy of Mr. Kendall's testimony is annexed hereto as Exhibit 4.) He further testified that social media is engineered such that it "preys on the most primal parts of your brain. The algorithm maximizes your attention by hitting you repeatedly with content that triggers your strongest emotions— it aims to provoke, shock, and enrage." (Ex. 4.) Defendants have adopted a number of the intentionally manipulative techniques first employed by Facebook, including the "infinite scroll," the "like button," and algorithmically-tailored content, and have improved upon Facebook's model by adding, among other things, user comments and a "downvote" button.

The total immersion that YouTube seeks to achieve on the part of their Users leads to a dependency that alters the relative bargaining positions of YouTube and those Users. Thus, even when YouTube prompts its Users to review its updated TOS, YouTube knows that its Users are dependent on its services and more than likely to accept its changes, whatever they may be. Further, YouTube updates its TOS and interface regularly, which can lead to fatigue and confusion among Users. Over time, the bargaining power between social media companies and their Users

shifts dramatically. As a result, it is likely that a relatively small percentage of YouTube's Users have ever read and developed an understanding of YouTube's updates to its TOS or to its policies.

In enforcing a forum selection clause contained in a different social media company's terms of service, this District has noted that "[s]ocial media is not a requirement of life." *Loomer v. Facebook, Inc.*, No. 19-CV-80893, 2020 WL 2926357, at *3 (S.D. Fla. Apr. 13, 2020). That view, however, is at odds with the United States Supreme Court's prior acknowledgement that "[s]ocial media allows users to gain access to information and communicate with one another about it on any subject that might come to mind" and provides "what for many are the principal sources for knowing current events, checking ads for employment, speaking and listening in the modern public square, and otherwise exploring the vast realms of human thought and knowledge." *Packingham v. North Carolina*, 137 S. Ct. 1730, 1737 (2017). "These websites can provide perhaps the most powerful mechanisms available to a private citizen to make his or her voice heard. They allow a person with an Internet connection to 'become a town crier with a voice that resonates farther than it could from any soapbox.'" *Id.* (quoting *Reno v. Am. C.L. Union*, 521 U.S. 844, 870 (1997)). Justice Thomas has described giant social media as "infrastructure." *Biden v. Knight First Amendment Inst.*, 141 S. Ct. 1220, 1221. In this regard, participating in social media absolutely is a requirement of being an active, engaged and informed American citizen in the twenty-first century, especially with respect to the health of the democratic process.

Justice Thomas also recently identified multiple cases that have been wrongly decided regarding 47 U.S.C. § 230, or in which courts have used an overbroad approach to the immunity it confers upon tech companies. *Malwarebytes, Inc. v. Enigma Software Grp. USA, LLC*, 141 S. Ct. 13, 15 (2020) ("This modest understanding [of Section 230] is a far cry from what has prevailed in court. Adopting the too-common practice of reading extra immunity into statutes where it does not belong[.]"). Justice Thomas cited with approval a Middle District of Florida case which

17

declined to follow Ninth Circuit and the Northern District of California cases whose holdings rendered portions of Section 230 superfluous. *Id.* at 17 (citing *e-ventures Worldwide, LLC, v. Google, Inc.* 2017 WL 2210029 (M.D. Fla. February 8, 2017) (holding that the Court would not follow Ninth Circuit case law which allows the general immunity of Section 230 (c)(1) to, "swallo[w] the more specific immunity in (c)(2)."). Plaintiffs respectfully submit that all of these claims, but in particular the FDUTPA and SSMCA claims reflect localized issues upon which the Eleventh Circuit should decide how Section 230 applies, particularly in view of Justice Thomas's interpretation of Section 230 and warnings about continued error.

## VI.    RETENTION IS APPROPRIATE UNDER 28 U.S.C. § 1404(A)

In the absence of a binding forum selection clause, the analysis under 28 U.S.C. § 1404(a) shifts to include the private, as well as the public interests set out above. *Atlantic Marine*, 517 U.S. at 62. The public and private factors to be considered include:

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Manuel v. Convergys Corp.* 430 F.3d 1132, n.1 (11th Cir. 2005). When weighed together, the balance of these nine criteria supports a conclusion that this Court should deny the Motion. The first five criteria, witness convenience, location of evidence, convenience of parties, locus of facts, and availability of process are, in a case involving technology issues and in an era where the entire world of business and law have become accustomed to virtual meetings and the avoidance of unnecessary travel, essentially neutral in application. This is not a case where visits to facilities

18

will be needed, nor is it to be expected that witnesses will be avoiding service. The vast majority of the evidence likely will be electronic.

As to the sixth criterion, the relative means of the parties, suffice it to say that Defendant (A.C. ¶ 35.) YouTube has, as of 2018, an estimated value of $160 billion. Plaintiffs' access to resources to conduct extensive litigation in Northern California are limited.

The seventh criterion, this forum's familiarity with the law, is, Plaintiff respectfully submits, a driving factor in favor of denying this Motion. This Court has frequently heard matters involving FDUTPA. The new SSMCA act is housed within FDUTPA, and while it is a new law, much of the analysis of FDUTPA cases with which this Court is already familiar will be applicable to an interpretation of the SSMCA. There will be a decided lack of familiarity with FDUTPA by a court in California, and thereby as a simply matter of judicial economy, a denial of the Motion would be appropriate.

The eighth criterion, the weight accorded to the Plaintiffs' choice of forum, also supports denial of the motion. Plaintiffs' choice of forum is accorded considerable deference, and should be respected unless it is clearly outweighed by other considerations. *Atlantic Marine*, 571 U.S. at 63 ("Because plaintiffs are ordinarily allowed to select whatever forum they consider most advantageous (consistent with jurisdictional and venue limitations), we have termed their selection the "plaintiff's venue privilege."); *Robinson v. Giamarco & Bill, P.C.*, 74 F.3d 253 (11th Cir. 1996) ("The plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations.") (quoting *Howell v. Tanner*, 650 F.2d 610 (5th Cir., Unit B 1981)) *Mindbasehq LLC, v. Google, LLC*, 2021 U.S. Dist. Lexis 91089 *7 (S.D. Fla. May 12, 2021) ("Traditionally, a plaintiff's choice of forum is accorded considerable deference.") Plaintiffs respectfully submit that given the overwhelming import of Florida law on this case, and its

19

potential impact on Florida consumers, their choice in filing before this Court should not be disturbed.

The last criteria, trial efficiency and the interest of justice, also support denial of the Motion. Plaintiffs have set out above the point that the causes of action here are of benefit to parties well beyond the Plaintiffs, and that the relief sought is essentially prospective in nature, not retrospective. Defendants are seeking to have this Court transfer to a California court a matter involving Florida residents' claims about how Defendants' conduct does not comport with Florida's laws.

## <u>CONCLUSION</u>

Based upon the foregoing, Plaintiffs respectfully submit that this Court should deny Defendants' Motion, and allow this Florida matter to be heard in Florida.

Date: September 23, 2021

Signature of Counsel

<u>/s/ Matthew Lee Baldwin</u>
Matthew L. Baldwin, Esq.
Florida Bar No. 27463
VARGAS GONZALEZ
BALDWIN DELOMBARD, LLP
815 Ponce De Leon Blvd., Third Floor
Coral Gables, FL  33134
Telephone: 305.631.2528
Email: Matthew@vargasgonzalez.com
E-service: Service8@VargasGonzalez.com

<u>/s/ Carlos Trujillo</u>
Carlos Trujillo, Esq.
Florida Bar No. 42697
VARGAS GONZALEZ
BALDWIN DELOMBARD, LLP
815 Ponce De Leon Blvd., Third Floor
Coral Gables, FL  33134
Telephone: 305.631.2528
Email: Ctrujillo@VargasGonzalez.com
E-service: Service8@VargasGonzalez.com

*Of Counsel*

JOHN P. COALE *(Pro Hac Vice)*
2901 Fessenden St. NW
Washington, D.C. 20008
Telephone: (202) 255-2096
Email: johnpcoale@aol.com

JOHN Q. KELLY *(Pro Hac Vice)*
E-mail: jqkelly@ibolaw.com
IVEY, BARNUM & O'MARA, LLC
170 Mason Street
Greenwich, CT 06830
Telephone: (203) 661-6000
Facsimile: (203) 661-9461

MICHAEL J. JONES *(Pro Hac Vice)*
E-mail: mjones@ibolaw.com
IVEY, BARNUM & O'MARA, LLC
170 Mason Street
Greenwich, CT 06830
Telephone: (203) 661-6000
Facsimile: (203) 661-9461

RYAN S. TOUGIAS *(Pro Hac Vice)*
E-mail: rtougias@ibolaw.com
IVEY, BARNUM & O'MARA, LLC
170 Mason Street
Greenwich, CT 06830
Telephone: (203) 661-6000
Facsimile: (203) 661-9461

RICHARD P. LAWSON, ESQ.
Florida Bar No. 165085
Gardner Brewer Martinez-Monfort P.A.
400 North Ashley Drive, Ste. 1100
Tampa, Florida 33602
(813) 221-9600 Telephone
(813) 221-9611 Fax
Primary Email: rlawson@gbmmlaw.com
Secondary
Email:  litigation@gbmmlaw.com

LUIS MARTINEZ-MONFORT, ESQ.
Florida Bar No. 0132713
Gardner Brewer Martinez-Monfort P.A.
400 North Ashley Drive, Ste. 1100
Tampa, Florida 33602
(813) 221-9600 Telephone
(813) 221-9611 Fax
Primary Email: rlawson@gbmmlaw.com
Secondary
Email:  litigation@gbmmlaw.com

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on September 23, 2021, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using CM/ECF and electronically provided to all Counsel of Record registered for service of same.


                                                  By:    <u>*/s/ Matthew Lee Baldwin*    </u>
                                                         Matthew L. Baldwin, Esq.