UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:21-cv-22445-MOORE/LOUIS

DONALD J. TRUMP et al.,

    Plaintiffs,

v.

YOUTUBE, LLC
and SUNDAR PICHAI,

    Defendants.
_____/

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF
MOTION TO TRANSFER TO THE NORTHERN DISTRICT OF CALIFORNIA**

## TABLE OF CONTENTS

**Page**

ARGUMENT ................................................................................................................................. 2

    A.    The Forum-Selection Clause Applies To Former President Trump ....................... 2

    B.    The Forum-Selection Clause Is Mandatory and Unambiguous. ............................. 5

    C.    Plaintiffs' FDUTPA Claims Are Covered by the Forum-Selection Clause. .......... 6

    D.    Public-Interest Factors Do Not Disfavor A Transfer. ............................................. 9

CONCLUSION ............................................................................................................................ 10

Plaintiffs have no meaningful answer to the forum-selection clause that governs this case. They do not contend that the clause is invalid or that they did not agree to it. And they ignore the unbroken line of cases applying that provision in cases like this (Dkt. 64, at 12-14 ("Mot."))—including a new ruling issued just days ago. *M.E.O.W.I.E. Found. Inc. v. Alphabet, Inc.*, No. 1:21-CV-00215, Dkt. 33 (D. Haw. Sept. 22, 2021). Instead, Plaintiffs' Opposition Brief ("Opp.") offers a series of makeweight arguments that provide no basis for escaping the clear terms of the controlling YouTube Terms of Service agreement ("TOS").

*First*, Mr. Trump contends the forum-selection clause somehow cannot be enforced against him because he used to be the President and was not capable of binding the United States to a private agreement. This argument fails on multiple levels. As a threshold matter, neither the United States nor any federal entity is a party to this case or faces transfer of its claims. Additionally, Mr. Trump created his YouTube channel in 2015 when he was a private citizen, and he does not dispute that he affirmatively agreed to the TOS in that capacity. Mr. Trump likewise filed this lawsuit as "a private citizen" (Am. Compl. ¶ 16), seeking personalized relief, including an order forcing YouTube to restore his account for use in his personal capacity. In short, this is a lawsuit between private parties governed by a private contract. The fact that Mr. Trump was once President in no way nullifies the forum-selection clause or allows him to evade it. And, while this Court can hold Mr. Trump to his agreement without addressing when a government entity can be bound by such a clause, Mr. Trump's argument that his former position makes YouTube's forum-selection clause unenforceable is conspicuously unsupported by any actual legal authority.

*Second*, Plaintiffs suggest that the forum-selection clause is not mandatory and that their claims somehow escape its scope. Not so: the clause speaks in plainly mandatory terms and unquestionably covers each of the claims here, which are directly and inexorably linked to both YouTube's service and the TOS. Plaintiffs can suggest otherwise only by ignoring the clear language of the forum-selection clause, which courts have uniformly found to be mandatory and to require transfer of exactly the kinds of claims that Plaintiffs assert in this case. And, under

equally established law, asserting claims under FDUTPA (along with federal claims that Plaintiffs do not even try to exclude from the clause) does not allow Plaintiffs to avoid transfer.

*Finally*, Plaintiffs try to portray this case as a localized controversy with uniquely Floridian interests at stake. It is no such thing. The former President of the United States (along with residents of various states) are suing a California-based corporation on behalf of a putative nationwide class and seeking broad nationwide relief (including the invalidation of a federal statute). In short, while this case may involve prominent parties, it does not remotely involve the kind of exceptional and highly localized public interests that could allow Plaintiffs to sidestep the clear terms of the governing forum-selection agreement. This case should be transferred.

## ARGUMENT

### A.     The Forum-Selection Clause Applies To Former President Trump

Plaintiffs' lead argument is that "the forum selection clause contained in YouTube's TOS … does not apply to [Former President Trump]" because "President Trump's social media accounts were government accounts, and not private ones" (Opp. at 5). Mr. Trump argues that, as President, he "[did] not have the authority to bind [himself] to the standard choice of forum, choice of law, or choice of venue terms" in YouTube's TOS (*id*. at 2), and that the TOS apply only to "individuals and businesses, not governmental entities" (*id*. at 4). This is smoke and mirrors.

Most fundamentally, this case simply does not involve the application of YouTube's TOS to a "federal entity." As Plaintiffs' own complaint makes clear, Mr. Trump "is a private citizen," and he brought this lawsuit solely in that capacity. Am. Compl. ¶ 16. Mr. Trump is not suing as the President of the United States or as a representative of the federal government. Nor could he. He is suing on his own behalf, seeking damages payable to himself, and relief that, in Plaintiffs' own words, is "essentially prospective in nature, not retrospective" (Opp. 20)—including an injunction requiring restoration of his private YouTube account. He alleges that YouTube's editorial choices with respect to that account are hampering his "ability to communicate personally with family and friends and politically" now that he has left the White House (Am. Compl. ¶ 158).

2

His central claim is that his rights "to petition the government for a redress of grievances" (*id.* ¶ 249) and his "First Amendment right[] to free speech" (*id.* ¶ 251) were violated at the behest of "government actors" (*id.* ¶¶ 238, 272). And his other claims are asserted under a Florida law that protects consumers—not the federal government or federal officials—and a Florida statute that was not even enacted until after Mr. Trump left office. *Id.* ¶¶ 267-301.

Nor does YouTube seek to invoke the forum-selection clause against the federal government. No federal entity or official is party to this case or faces transfer of its claims. The relevant TOS is between YouTube and Mr. Trump, who was a private citizen when he created his YouTube account. Mr. Trump makes no claim that he did not affirmatively accept the TOS, including the forum-selection clause, in 2015 (or again each time he uploaded videos from a web browser). *See* Veitch Decl. (Dkt. 64-1) ¶¶ 10-12. Nor does he suggest that there was any impediment to his ability to bind himself to the TOS as a private party. Mr. Trump then used that account as a private citizen, and chose to keep using it after he became President, including in connection with his re-election campaign. Am. Compl. ¶¶ 160-62; Opp. at 2. Mr. Trump was also a private citizen in July 2021, when he instigated this lawsuit in his home base in Florida. In short, Mr. Trump's YouTube account was a private party's account when it was created, just as it was when this case was filed, and just as it is now. Thus, there is no need for the Court to consider any implications of applying the forum-selection clause to an actual federal entity.[1]

While the Court could stop there, the legal premise of Mr. Trump's argument is also flawed. Not surprisingly, he provides no authority for the proposition that the President is powerless to

---

[1] Mr. Trump does not even try to explain why, if his lawsuit is really one brought by a federal entity about an account that was government property, he would have authority to bring this claim as a private citizen, much less why it would be proper for him to have filed such a claim in this Court and (at least in part) under Florida law. Nor could he. It makes no sense to suggest that Mr. Trump can create and use a YouTube account as a private citizen, keep that account for his personal use after he leaves office, and then sue as a Florida resident seeking restoration of that account—only then to invoke his status as the former President to avoid the forum-selection clause he affirmatively accepted.

enter into a personal contract with a private company or to be bound by an agreement he agreed to before becoming President—much less that any such limits would continue to apply to him even after he leaves office and brings litigation as a private citizen. Mr. Trump relies primarily on two unverified exhibits: a "Content Hosting Agreement for Federal Entities" purportedly signed on behalf of the National Archives and Records Administration (Ex. 1) (the "NARA Agreement"); and an informational webpage titled "Federal-Compatible Terms of Service Agreements" published by the General Services Administration (Ex. 2) (the "GSA Webpage"). Neither remotely supports an argument that YouTube's general TOS do not apply here.

The NARA Agreement purports to be a contract between Google and NARA for YouTube content hosting. Ex. 1. Mr. Trump does not claim that he accepted this agreement, that he was ever a party to it, or that it was ever intended to have anything to do with his YouTube account.[2] The GSA webpage is equally irrelevant. Beyond lacking any legal force, the webpage offers no guidance on the issues raised here. Plaintiff asserts that the "guidelines in exhibit 2 make it clear that there should be no choice of forum, choice of law, or choice of venue clauses in the Agreement." Opp. at 2. It does no such thing. The document does not even ***mention*** forum-selection clauses, much less suggest that they are unenforceable against federal entities. And it certainly does not suggest that if the President accepts such an agreement as a private citizen, the agreement cannot be enforced against him if he chooses—when he is again a private citizen—to initiate litigation against the private company with whom he contracted.

Nor is there any other basis for that conclusion. Mr. Trump refers in passing to the Anti-Deficiency Act ("ADA") and the Presidential Records Act ("PRA"), but does not explain how those statutes prevented him from "accept[ing] the controlling law, jurisdiction, or venue clauses

---

[2] If it did apply here, the NARA Agreement would only further undermine Mr. Trump's claims. The Agreement bars "punitive or exemplary damages" (§ 7(a)), caps "aggregate liability for any cause of action arising from or related to this agreement" (*id.* § 7(b)), and provides that only federal and California law apply (thereby excluding claims under Florida law) (*id.* § 9).

contained in YouTube's TOS without input from other agencies," Opp. at 4, or why that would render those provisions legally unenforceable against him as a private citizen. By its terms, the ADA does not apply, as the TOS is not a "contract or obligation for the payment of money." 31 U.S.C. § 1341. And the PRA has nothing to do with the President's acceptance of private contracts or the enforcement of forum-selection provisions in them. 44 U.S.C. § 2202.

Finally, Plaintiff relies on *Knight First Amend. Inst. at Columbia Univ. v. Trump*, 928 F.3d 226 (2d Cir. 2019) (Opp. at 5-6), without acknowledging that it was vacated by the Supreme Court—precisely because the case became moot when Mr. Trump left office. 141 S. Ct. 1220 (2021). But even beyond that, *Knight* is irrelevant. The Second Circuit held that Mr. Trump's use of a Twitter account, while he was President, made that account into a "public forum," such that Mr. Trump violated the First Amendment when he blocked users from that account, *Knight*, 928 F.3d at 237-38—though the court made clear that it was ***not*** holding that "private social media companies are bound by the First Amendment when policing their platforms" (*id.* at 230). The decision said nothing whatsoever about forum-selection clauses (or other social media services), though it did point out that Twitter "is governed by terms of service which users agree to when they use the platform." *Id.* at 231 n.2. The Second Circuit certainly did not suggest that Mr. Trump was somehow exempt from those terms, much less that if a public official uses a social media account for government business, the otherwise binding forum-selection clause becomes categorically unenforceable. Moreover, even as to the Twitter account at issue, the Second Circuit was clear: "No one disputes that before he became President the Account was a purely private one or that once he leaves office the Account will presumably revert to its private status." *Id.* at 231. The same is true here. In short, neither the Second Circuit's (vacated) holding, nor any other authority, supports Mr. Trump's effort to evade YouTube's forum-selection clause.

**B.     The Forum-Selection Clause Is Mandatory and Unambiguous.**

Plaintiffs next argue that the forum-selection clause is "ambiguously drafted" as to whether it is mandatory. Opp. at 7. But the clause could hardly be clearer: "All claims arising out of or

relating to these terms or the Service . . . will be litigated exclusively in the federal or state courts of Santa Clara County, California, USA." Mot. Ex. A at 7. This is mandatory language, and Plaintiffs ignore the extensive authority confirming just that. Mot. at 14. Plaintiffs try to manufacture ambiguity by pointing to a sentence about personal jurisdiction. Opp. at 8. But nothing in that sentence renders the operative sentence unclear or permissive. The two sentences work hand in glove: the first says where claims must be litigated; the second confirms that the parties consent to personal jurisdiction in those courts.

Plaintiffs rely heavily on Judge Jordan's decision in *Travelcross, S.A. v. Learjet, Inc.*, 2011 WL 13214118 (S.D. Fla. Mar. 28, 2011), but the clause there addressed only jurisdiction: "The courts of Kansas shall have exclusive jurisdiction to hear and determine all claims, disputes, actions or suits which may arise hereunder." *Id.* at *1. Explaining that jurisdiction was not necessarily the same thing as venue, Judge Jordan concluded that this clause was ambiguous as to whether it made Kansas the exclusive venue for litigation. *Id.* at *4. That reasoning does not apply here. YouTube's clause speaks expressly of venue: it announces a clear mandate that covered claims "will be litigated exclusively" in California. Courts have uniformly held that such language is mandatory. *See, e.g.*, *TradeComet.com LLC v. Google, Inc.*, 693 F. Supp. 2d 370, 378 (S.D.N.Y. 2010) (clause requiring that claims "shall be litigated exclusively in the federal or state courts of Santa Clara County, California" "contains compulsory language specifying venue, which is sufficient to make the clause mandatory").[3]

### C. Plaintiffs' FDUTPA Claims Are Covered by the Forum-Selection Clause.

Plaintiffs also argue that their FDUTPA claims somehow fall outside the language of the forum-selection clause. Opp. at 10-13. (Plaintiffs make no similar argument about their two federal

---

[3] *See also Flowbee Int'l, Inc. v. Google, Inc.*, 2010 WL 11646901, at *3 (S.D. Tex. Feb. 8, 2010) (same); *cf. Emerald Grande, Inc. v. Junkin*, 334 F. App'x 973, 976 (11th Cir. 2009) (clause declaring that particular courts "will be the venue for any dispute" was mandatory).

claims, conceding that these claims are covered.) That argument ignores reality—both what the governing agreement says and what Plaintiffs' FDUTPA claims allege.

Contrary to what Plaintiffs suggest, there is no rule against applying a forum-selection clause to FDUTPA claims. *See, e.g.*, *Farmers Grp., Inc. v. Madio & Co.*, 869 So. 2d 581, 582 (Fla. 4th DCA 2004) ("[T]he mere fact that [defendant]'s remaining claims allege statutory violations of the FDUTPA does not mean that they are not subject to the forum selection clause."). And Plaintiffs largely ignore the numerous cases that have done just that. *Compare* Mot. at 17-18 & n.5 *with* Opp. at 12 n.4; *accord Fairbanks Contracting & Remodeling, Inc. v. Hopcroft*, 169 So. 3d 282, 283-84 (Fla. 4th DCA 2015) (transferring FDUTPA claim under provision requiring that "any action arising out of, connected with, or to enforce the Agreement" will be brought in California).

As those cases recognize, it is the language of the forum-selection clause that determines whether it applies to a FDUTPA claim (just as with any other kind of claim). *Fairbanks*, 169 So. 3d at 283. And here the relevant language is broad and readily encompasses all the claims at issue. Mot. at 10-12. Plaintiffs assert—without citation—that their Florida law claims "relate not to their access to and use of the Services." Opp. at 11. That is a remarkable thing to say about claims premised on allegations such as "Defendants have repeatedly failed to act in good faith and accordance with their stated policies regarding the removal, demonetization, and moderation of content on their platform." Am. Compl. ¶ 270; *accord id.* ¶¶ 2-4, 6-7, 10-12, 271, 281-82, 284-87, 301. Such claims plainly arise from or relate to the YouTube Service. *See, e.g.*, *Phillips v. NCL Corp. Ltd.*, 2019 WL 2288987, at *1 (S.D. Fla. May 29, 2019) (holding FDUTPA claim within the scope of a clause requiring arbitration of "'[a]ny and all disputes, claims or controversies whatsoever . . . relating to or in any way arising out of or connected with this Contract or Guest's cruise'"), *aff'd*, 824 F. App'x 675 (11th Cir. 2020).[4]

---

[4] As YouTube has explained (Mot. at 11-12), these claims also relate to the TOS itself, as they accuse YouTube of deceiving users by inconsistently applying the content policies incorporated into that agreement. Am. Compl. ¶¶ 270-71, 281-82, 286-87, 292-93, 301. The fact that Plaintiffs

7

Unsurprisingly, Plaintiffs have no response to the mountain of cases that have applied YouTube's forum-selection provisions to claims exactly like these. Mot. at 11, 13-14. Plaintiffs rely on *Management Computer Controls, Inc. v. Charles Perry Construction, Inc.*, 743 So. 2d 627, 630 (Fla. 1st DCA 1999), but the clause there was far narrower, covering only claims "arising out of" the contract—but not those related to it or to the ongoing provision of a service. *Id.* at 629. Recognizing that the binding effect of a venue clause "depends on its language," the court held that this limited provision did not cover claims alleging that the software plaintiff purchased did not work as the seller represented. *Id.* at 630-31. That case has no bearing on the much broader provision and very different FDUTPA claims at issue here. Indeed, multiple courts (including the same Court of Appeal) have rejected the idea that *Management Computer* stands for some "per se rule against enforcing a forum selection clause" as to FDUTPA claims. *SAI Ins. Agency, Inc. v. Applied Sys., Inc.*, 858 So. 2d 401, 404 (Fla. 1st DCA 2003); *accord Diabetic Care RX, LLC v. Express Scripts, Inc.*, 2018 WL 4537203, at *3 (S.D. Fla. July 2, 2018), *adopted*, 2018 WL 4810147 (S.D. Fla. July 18, 2018); *Fairbanks*, 169 So. 3d at 283.[5]

Similarly, even assuming that FDUTPA claims may implicate "a larger public interest" (Opp. at 12), that provides no basis for finding that the claims here do not relate to YouTube's service or the TOS—or for otherwise refusing to apply the forum-selection clause. *See, e.g.*, *World Vacation Travel, S.A., de C.V. v. Brooker*, 799 So. 2d 410, 411-12 (Fla. 3d DCA 2001) (enforcing forum-selection clause as to FDUTPA claim "is not violative of Florida public policy")[6]; *Gordon*

---

have not asserted an actual breach of contract claim is irrelevant. *E.g.*, *Best Beach Getaways LLC v. TSYS Merch. Sols. LLC*, 2020 WL 9264809, at *3 (N.D. Fla. July 2, 2020) (FDUTPA claim governed by venue clause covering claims "relating to" the agreement).

[5] Plaintiffs also cite *Contractor's Mgmt. Sys. of NH, Inc. v. Acree Air Conditioning, Inc.*, 799 So. 2d 320, 321 (Fla. 2d DCA 2001), but the provision there covered only "[a]ny lawsuit, litigation or arbitration *concerning this Agreement*," and the court held that the claim did not arise from the agreement (emphasis added).

[6] Plaintiffs claim that *Brooker* involved language "far broader" than that here. Opp. at 12 n.4. Not so. The forum-selection clause there was narrow, covering "any controversy or dispute in the

*v. Sandals Resorts Int'l, Ltd.*, 418 F. Supp. 3d 1132, 1140-41 (S.D. Fla. 2019) (same). As Judge Walker explained in rejecting similar arguments: "Florida's interest in preventing deceptive and unfair trade practices can be vindicated just as meaningfully by any given federal court—particularly since the State of Florida is not a party to this case." *Best Beach Getaways*, 2020 WL 9264809, at *2. The same is true here. Plaintiffs cannot invoke FDUTPA to escape transfer.

### D. Public-Interest Factors Do Not Disfavor A Transfer.

Finally, because this case involves a forum-selection clause, the private Section 1404 factors are irrelevant, and Plaintiffs come nowhere close to carrying the high burden of showing that the "public-interest factors ***overwhelmingly*** disfavor a transfer." *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for the W. Dist. of Tex.*, 571 U.S. 49, 67 (2013) (emphasis added). Plaintiffs insist that this is a "localized controversy" that will "primarily affect the way Defendants engage in business in Florida" and where "all of the potential relief is to be directed to Florida consumers." Opp. at 13-15. But that describes a case quite different from the one Plaintiffs actually brought.

Plaintiffs—the former President, individuals from Colorado, Florida, and New York, and an organization established in Washington, D.C. (Am. Compl. ¶¶ 16-25)—are suing California-based defendants on behalf of a nationwide class of YouTube users. *Id.* ¶¶ 282, 301-02. The case is based on content-moderation practices with no particular connection to Florida. And Plaintiffs' lead claims assert a violation of the U.S. Constitution and seek to invalidate a federal law. In short, this is far from a Florida-specific dispute—and it certainly is not one of the few cases that allow public-interest factors to override a binding forum-selection clause.[7]

---

interpretation of this agreement[.]" *Brooker*, 799 So. 2d at 411. The language in the YouTube TOS—"arising out of or relating to these terms or the Service"—is considerably more expansive.

[7] Plaintiffs rely solely on *Seaman v. Private Placement Capital Notes II, LLC*, 2017 WL 1166336, at *1 (S.D. Cal. Mar. 29, 2017), which is far afield. That case was brought by an appointed receiver for an investment firm charged with recovering assets for defrauded investors. In finding that it was among the "rare" cases that should not be transferred, the court relied primarily on the fact that transfer would increase the expense and burden on the receiver and thus reduce the funds available to the investors—a circumstance not remotely presented here. The court also explained that the related SEC enforcement action that led to the case was filed in the district,

That Plaintiffs have asserted FDUTPA claims makes no difference here either. Mot. at 17-18 & nn. 4-5. Courts in the Northern District of California often handle FDUTPA claims. *See, e.g.*, *Parziale v. HP, Inc.*, 445 F. Supp. 3d 435, 442-47 (N.D. Cal. 2020); *In re JUUL Labs, Inc., Mktg., Sales Practices, & Prods. Liab. Litig.*, 497 F. Supp. 3d 552, 666-73 (N.D. Cal. 2020). (Of course, **no courts** are experienced in applying Florida's new social media law, because it was enjoined before it took effect.) And it would be wildly inefficient to sever Plaintiffs' FDUTPA claims, leaving them here while the federal claims are transferred, as that "would require the parties to prosecute (and defend) two simultaneous lawsuits on the same subject in two different fora, potentially doubling the costs and effort involved." *Best Beach Getaways*, 2020 WL 9264809, at *3 (rejecting argument that "severing Plaintiff's FDUTPA claim would serve the convenience of the parties or the interests of justice").[8]

## CONCLUSION

This case should be transferred to the Northern District of California.

---

which had an unusually strong interest in the case. *Id.* at *7. This out-of-district case provides no support for overcoming the forum-selection clause here. *See Azima v. RAK Inv. Auth.*, 926 F.3d 870, 880 & n.4 (D.C. Cir. 2019) (rejecting similar reliance on *Seaman*).

[8] "[A] court evaluating a defendant's § 1404(a) motion to transfer based on a forum-selection clause should not consider arguments about the parties' private interests." *Atl. Marine*, 571 U.S. at 64. But even if Plaintiffs could evade the forum-selection clause (which they cannot), the private interests they assert would offer no reason to keep the case in this District. Opp. at 18-20. Plaintiffs do not rely on the convenience of parties and witnesses, or the location of evidence or locus of facts, calling them merely "neutral" factors. *Id.* at 18. In fact, given that both Defendants are located in the Northern District of California, and Plaintiffs do not allege (nor could they) that the relevant events, especially the moderation decisions at issue, occurred in Florida as opposed to in California, these factors actually weigh in favor of transfer. And Plaintiffs' argument that they have only "limited" financial resources to conduct litigation in California (*id.* at 19) is unexplained (and implausible). Nor should the Court defer to "the Plaintiffs' choice of forum" (Opp. at 19), given that most of "the operative facts underlying the[ir] cause[s] of action did not occur within the forum," *Carucel Invs., L.P. v. Novatel Wireless, Inc.*, 157 F. Supp. 3d 1219, 1225 (S.D. Fla. 2016) (citation omitted), and because they seek to represent a nationwide class, *see Jones Real Estate, Inc. v. Avatel Techs., Inc.*, 2018 WL 1121537, at *4-5 (S.D. Fla. Mar. 1, 2018).

DATED: September 29, 2021  Respectfully submitted,

**STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A**.
150 West Flagler Street, Suite 2200
Miami, Florida 33130
Telephone: (305) 789-3229
Facsimile: (305) 789-2664

By: */s/ Jay B. Shapiro*
Jay B. Shapiro, Esq.
Florida Bar No. 776361
jshapiro@stearnsweaver.com
Douglas L. Kilby, Esq.
Florida Bar No. 73407
dkilby@stearnsweaver.com
Abigail G. Corbett
Florida Bar No. 31332
acorbett@stearnsweaver.com

**WILSON SONSINI GOODRICH & ROSATI, P.C.**
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone: (212) 999-5800
Facsimile: (212) 999-5801

Brian M. Willen, Esq.
(admitted *pro hac vice*)
bwillen@wsgr.com
Benjamin Margo, Esq.
(admitted *pro hac vice* )
bmargo@wsgr.com

**WILSON SONSINI GOODRICH & ROSATI, P.C.**
1700 K Street, N.W.
Washington, D.C. 20006
Telephone: (202) 973-8800
Facsimile: (202) 973-8899

    Steffen N. Johnson, Esq.
    (admitted *pro hac vice*)
    sjohnson@wsgr.com
    Meng Jia Yang, Esq.
    (admitted *pro hac vice*)
    mjyang@wsgr.com

**WILSON SONSINI GOODRICH & ROSATI, P.C.**
One Market Plaza
Spear Tower, Suite 3300
San Francisco, California 94105
Telephone: (415) 947-2000
Facsimile: (415) 947-2099

    Amit Q. Gressel, Esq.
    (admitted *pro hac vice*)
    agressel@wsgr.com

*Counsel for Defendants YouTube, LLC*
*and Sundar Pichai*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 29th day of September, 2021, I electronically filed a copy of the foregoing document with the Clerk of the Court using CM/ECF, which sent a notice of electronic filing to all counsel of record.

By: */s/ Jay B. Shapiro*
Jay B. Shapiro